STATE *ex rel* MACOMB COUNTY PROSECUTING ATTORNEY v
MESK

Docket No. 57712. Submitted October 6, 1982, at Detroit.—Decided
February 9, 1983. Leave to appeal denied 417 Mich __.

The state on relation of the Macomb County Prosecuting Attor-
ney brought an action in the Macomb Circuit Court against
H. C. Mesk and S.M.R. Corporation, doing business as Gordon
Studios, owner and lessee of property housing a massage parlor
operated by Art Studios, Inc., to abate a nuisance, alleging that
the property was being used "for the purpose of assignation or
prostitution, or, for the use of prostitutes". The complaint
alleged that on February 27, 1980, the Art Studio was visited
by an undercover police officer who was employed by the
Warren Police Department. After requesting a massage and
selecting a "model", the officer was led to a room where he was
instructed to disrobe and lie on the massage table. The model,
who was nude from the waist up, was questioned by the officer
concerning the availability of sexual services. She responded by
stating that she would engage in fellatio or perform manual
stimulation for the payment of a specified sum. After the officer
paid the woman the agreed upon amount, and after she began
preparations to perform the sexual act, the officer identified
himself as a police officer and placed her under arrest. At trial,
over defense counsel's objections, plaintiff was permitted to
introduce evidence concerning similar incidents which took

REFERENCES FOR POINTS IN HEADNOTES
[1] 16A Am Jur 2d, Constitutional Law § 818.
  21 Am Jur 2d, Criminal Law §§ 15-17.
  73 Am Jur 2d, Statutes § 346.
[2] 63 Am Jur 2d, Prostitution § 1.
[3] 63 Am Jur 2d, Prostitution § 2.
[4] 50 Am Jur 2d, Lewdness, Indecency, and Obscenity § 3.
[5] 24 Am Jur 2d, Disorderly Houses § 26.
  Exhibition of obscene motion pictures as nuisance. 50 ALR3d 969.
  Prono shops or similar places disseminating obscene materials as
    nuisance. 58 ALR3d 1134.
[6] 58 Am Jur 2d, Nuisances § 138.
[7] 29 Am Jur 2d, Evidence § 497.

place at the Art Studio between different undercover police officers and other models on July 25, 1980, November 11, 1980, and November 29, 1980. The court, Kenneth N. Sanborn, J., granted judgment for plaintiff. Defendants appealed, alleging numerous errors. *Held:*

1. The term "prostitution" includes manual stimulation of another for the payment of money. The nuisance abatement statute is not unconstitutionally vague.

2. The constitutional right to privacy does not extend to protect acts of prostitution.

3. Speech incident to assignation is commercial speech and is not entitled to the protection of the first amendment.

4. The statute for the abatement of statutory nuisances requires that evidence must be presented to show that at least one act of lewdness, gambling, prostitution, or unlawful use of drugs or alcohol had occurred on the premises complained of within 30 days before the complaint was filed. The court did not err in admitting the evidence of subsequent similar acts to show the continuing nature of the conduct and knowledge on the part of the owner.

5. Evidence of statements of the models to the officers was properly admitted to show that the statements were made. Such evidence is not hearsay.

6. The fact that one of the models was subsequently acquitted of criminal charges growing out of the events does not bar or collaterally estop the abatement action.

7. The evidence was sufficient to establish the continuing nature of the nuisance and knowledge of the owner.

Affirmed.

1. CONSTITUTIONAL LAW — VAGUENESS — DUE PROCESS.

A penal statute, in order to satisfy the due process requirements with respect to vagueness, must give a person of average intelligence fair notice that his conduct is forbidden.

2. WORDS AND PHRASES — PROSTITUTION.

The term "prostitution" includes manual stimulation of another for the payment of money.

3. CONSTITUTIONAL LAW — RIGHT TO PRIVACY — PROSTITUTION.

The constitutional right to privacy does not extend to protect acts of prostitution.

4. CONSTITUTIONAL LAW — FREE SPEECH — ASSIGNATION.

Speech incident to assignation is commercial speech and is not entitled to the full protection of the First Amendment.

5. NUISANCE — STATUTES.

The statute for the abatement of statutory nuisances requires that evidence must be presented to show that at least one act of lewdness, gambling, prostitution, or unlawful use of drugs or alcohol had occurred on the premises complained of within 30 days before the complaint was filed (MCL 600.3801, 600.3815; MSA 27A.3801, 27A.3815).

6. NUISANCE — EVIDENCE — SIMILAR ACTS.

A trial court, in a nuisance abatement action, does not err in admitting evidence of similar acts occurring subsequent to the act complained of.

7. EVIDENCE — HEARSAY — RULES OF EVIDENCE.

Evidence of statements offered to show the fact that the statements were made is not hearsay (MRE 801[c]).

*George N. Parris,* Prosecuting Attorney, and *Thomas Lanoy, William A. Harding,* and *Michael F. Macherzak,* Assistants Prosecuting Attorney, for plaintiff.

*Gregory Fisher Lord* and *Robert H. Roether,* for defendants.

Before: DANHOF, C.J., and N. J. KAUFMAN and D. C. RILEY, JJ.

DANHOF, C.J. Plaintiff commenced this action on March 24, 1980, and alleged that the Art Studio located on Van Dyke Road in the City of Warren was a nuisance pursuant to MCL 600.3801; MSA 27A.3801, in that it was being used "for the purpose of assignation or prostitution, or, for the use of prostitutes". After a bench trial which was commenced on December 16, 1980, the trial court entered an order enjoining defendants from operating the premises for those purposes and ordered the building closed for a period of one year. Defendants appeal as of right.

The Art Studio was a massage parlor operated by Art Studios, Inc., which leased the building

from defendant S.M.R. Corporation. S.M.R. leased the building from Michigan Diversified Business Services, Inc., which in turn leased it from defendant H. C. Mesk, the owner of the property. The complaint alleged that on February 27, 1980, the Art Studio was visited by an undercover police officer who was employed by the Warren Police Department. After requesting a massage and selecting a "model", the officer was led to a room where he was instructed to disrobe and lie on the massage table. The model, who was nude from the waist up, was questioned by the officer concerning the availability of sexual services. She responded by stating that she would engage in fellatio or perform manual stimulation for the payment of a specified sum. After the officer paid the woman the agreed upon amount, and after she began preparations to perform the sexual act, the officer identified himself as a police officer and placed her under arrest.

At trial, over defense counsel's objections, plaintiff was permitted to introduce evidence concerning similar incidents which took place at the Art Studio between different undercover police officers and other models on July 25, 1980, November 11, 1980, and November 29, 1980.[1]

On appeal, defendants make numerous assignments of error, none of which require reversal. Defendants first claim that the Legislature's failure to define the term "prostitution" violates due process in that it failed to put them on notice that the performance of manual stimulation for the

[1] The July 25, 1980, incident involved an agreement to perform manual stimulation on the premises for $20, and an offer to perform fellatio off of the premises; the November 11, 1980, incident involved an offer to perform manual stimulation off of the premises for $50; the November 29, 1980, incident involved an agreement to perform fellatio on the premises for the sum of $75.

payment of money is prohibited by the statute. The public nuisance abatement statute, MCL 600.3801; MSA 27A.3801 provides:

"Any building, vehicle, boat, aircraft or place used for the purpose of lewdness, assignation or prostitution or gambling, or used by, or kept for the use of prostitutes or other .disorderly persons, or used for the unlawful manufacture, storing, possessing, transporting, sale, keeping for sale, giving away, bartering, furnishing or otherwise disposing of any narcotic and/or hypnotic drug as defined by law or of any vinous, malt, brewed, fermented, spirituous or intoxicating liquors or any mixed liquors or beverages, any part of which is intoxicating, is hereby declared a nuisance and the furniture, fixtures and contents of any such building, vehicle, boat, aircraft, or place and all such intoxicating liquors therein are also declared a nuisance, and all such narcotic and/or hypnotic drugs and nuisances shall be enjoined and abated as hereinafter provided, and as provided in the court rules. Any person, or his servant, agent or employe who shall own, lease, conduct or maintain any building, vehicle or place used for any of the purposes or by any of the persons above set forth or where any of the acts above enumerated are conducted, permitted or carried on, is guilty of a nuisance."

In order to satisfy due process requirements with respect to vagueness, a penal statute must give a person of average intelligence fair notice that his conduct is forbidden. *United States v Harriss,* 347 US 612; 74 S Ct 808; 98 L Ed 989 (1953). Although it does not appear that the term prostitution, as used in the statute, has heretofore been defined by a panel of this Court, we have little difficulty in concluding that the complained-of acts are included within the proscriptions of the statute and that defendants were afforded fair notice of the same.

In *State ex rel Wayne County Prosecutor v*

*Diversified Theatrical Corp,* 396 Mich 244; 240 NW2d 460 (1976), the Supreme Court ruled that motion picture theaters which show obscene films may not be enjoined under the abatement statute. In the opinion, the Court stated that the meaning of the terms lewdness, assignation and prostitution, as used in the abatement statute, "is clear". See also *Morgan v Detroit,* 389 F Supp 922, 929 (ED Mich, 1975); *Detroit v Recorder's Court Judge,* 104 Mich App 214, 235; 304 NW2d 829 (1981). Although the Court did not expressly define the terms, it noted that its decision was in accord with the decisions of other jurisdictions which involved similar legislation and it quoted from an Illinois Court of Appeals decision, *Chicago v Geraci,* 30 Ill App 3d 699, 703; 332 NE2d 487 (1975), wherein the Court defined the terms as follows:

" 'However, we find no confusion in the meaning of these terms. Although *traditionally the term "lewdness" is viewed as being broader than and including the term "prostitution," (People v Lackaye,* 348 Ill App 542; 109 NE2d 390 [1952]; opinion adopted by Illinois Supreme Court, 1 Ill 2d 618; 116 NE2d 359 [1953].) such terms refer to *the same general class of activities* which are normally associated with houses of prostitution (or whatever such establishments may be called). They are intended to designate and prohibit sex acts of whatever nature which are performed for money. (Emphasis supplied.)' " 396 Mich 250, fn 13.

In a subsequent decision, the Illinois Supreme Court, in construing an abatement act similar to ours, rejected a claim by defendant that the term "prostitution" did not include acts involving manual stimulation:

"The defendants contend that in order to be considered a violation of the ordinance, and therefore a public

nuisance, their conduct must constitute an act of 'prostitution.' They argue, too, that the city council, in enacting the ordinance, intended that 'prostitution' be defined, as in the Criminal Code of 1963 (Ill Rev Stat 1975, ch 38, ¶ 11-14), to include only acts of sexual intercourse and deviate sexual conduct. We do not agree that such a narrow definition of 'prostitution' was intended by the city council; nor is such an interpretation constitutionally required.

"The activities of a house of prostitution involve commercial sexual acts of every sort. Clearly, a masturbatory massage parlor is engaged in commercial acts of sexual gratification involving the sex organs of one person and the hand of another." *Chicago v Cecola,* 75 Ill 2d 423, 427-428; 389 NE2d 526 (1979).

In *State ex rel Gilchrist v Hurley,* 48 NC App 433, 443; 269 SE2d 646 (1980), a North Carolina Appellate Court stated the following in rejecting defendant's claim that North Carolina's red light abatement act was unconstitutionally vague:

"[R]eference to the criminal code—*i.e.,* NC G S § 14-203—is not required to understand what the term 'prosecution' means or, in our opinion, what conduct is encompassed within its meaning. We are not inadvertent—and we doubt that few are—to the activity's common, if not accurate, reputation as 'the world's oldest profession.' The term is precise on its face and gives fair notice of what is forbidden. *Accord, Morgan v Detroit,* 389 F Supp 922 (ED Mich, 1975). We decline defendants' invitation to interpret the term so narrowly as to exclude the conduct charged in this record. We hold that prostitution plainly includes the offering or receiving of the body, in return for a fee, for acts of vaginal intercourse, anal intercourse, fellatio, cunnilingus, masturbation, or physical contact with a person's genitals, pubic area, buttocks or breasts. We hasten to add that our cataloguing of these acts of sexual behavior is not intended to exclude other acts of sexual conduct offered or received for pay." But see contra,

*State ex rel Clemens v Toneca, Inc,* 265 NW2d 909 (Iowa, 1978).

Although we find it unnecessary to decide whether the term prostitution, as used in our abatement statute, should be defined as broadly as the term was defined by the North Carolina Court, we are convinced that the term does include manual stimulation of another person for the payment of money and that persons of average intelligence were provided with fair notice that the statute proscribed such conduct.

Defendant next complains that the activity involved was consensual activity between adults and that the proscriptions contained in the abatement statute constitute an unwarranted invasion into their constitutionally protected right of privacy.

Although the right of privacy is not expressly provided for in the United States Constitution, such a right has been recognized as arising out of the Fourteenth Amendment's[2] concept of personal liberty. *Roe v Wade,* 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973). Although the limits of this right have never been expressly defined, it is clear that the right extends to the right of persons to make certain decisions concerning marriage, procreation and child rearing. *Griswold v Connecticut,* 381 US 479; 85 S Ct 1678; 14 L Ed 2d 510 (1965); *Loving v Virginia,* 388 US 1; 87 S Ct 1817; 18 L Ed 2d 1010 (1967); *Eisenstadt v Baird,* 405 US 438; 92 S Ct 1029; 31 L Ed 2d 349 (1972); *Roe v Wade, supra.* In *Whalen v Roe,* 429 US 589, 598; 97 S Ct 869; 51 L Ed 2d 64 (1977), the Court described the privacy right as protecting two different kinds of interest. The first is the individual interest in avoiding disclosure of personal matters. The other is the

[2] US Const, Am XIV.

interest in independence in making certain kinds of decisions without governmental interference. It is this latter interest which defendants assert is involved here.

The right of privacy with respect to decision making has been held to protect: (1) the right of marital privacy, *Loving v Virginia, supra;* (2) the right of privacy in the home, which encompasses both decisions concerning child rearing and decisions about a family living arrangement, *Wisconsin v Yoder,* 406 US 205; 92 S Ct 1526; 32 L Ed 2d 15 (1972); and (3) the right to make decisions concerning the integrity of one's body, *Roe v Wade, supra.* See *Johnson v San Jacinto Junior College,* 498 F Supp 555 (SD Tex, 1980). In none of these decisions has the Court ruled that the right of privacy includes the right of individuals to engage in sexual relations for the payment of money. In our opinion, the commercial nature of the activity coupled with the fact that it took place between unmarried individuals, clearly takes it outside the scope of the constitutional protections. We are in agreement with the Supreme Court of Colorado in *People v Mason,* 642 P2d 8, 12 (Colo, 1982), wherein the Court stated the following:

"For purposes of due process, the state's interest in curbing prostitution cannot be denied. The health hazards posed by this activity as well as the high incidence of other criminal conduct associated with it are legitimate considerations which by themselves support legislative intervention in this area. See, *e.g., State v Armstrong,* 282 Minn 39; 162 NW2d 357 (1968); *Hensley v City of Norfolk,* 216 Va 369; 218 SE2d 735 (1975); *Salt Lake City v Allred,* 20 Utah 2d 298; 437 P2d 434 (1968); *Seattle v Jones,* 79 Wash 2d 626; 488 P2d 750 (1971). The legislative decision to restrict prostitution to commercial sexual activity between persons who are not married to each other is consistent with the heightened

privacy interest which the constitution accords to the marital relationship. *Griswold v Connecticut,* 381 US 479; 85 S Ct 1678; 14 L Ed 2d 510 (1965); see also *Zablocki v Redhail,* 434 US 374; 98 S Ct 673; 54 L Ed 2d 618 (1978)."[3]

Defendants also complain that the state's attempt to punish these activities abridges their First Amendment freedoms of speech and association. They claim that this is especially so with respect to the incident which occurred on November 11, 1980, because that incident merely involved an offer to perform sexual services for the payment of money, as opposed to a completed agreement. They claim that such an offer involved "pure speech" entitled to the greatest First Amendment protections. We disagree.

We first note that an offer to perform sexual services for the payment of money constitutes assignation for purposes of prostitution and is prohibited by the statute. *State ex rel Wayne County Prosecuting Attorney v Levenburg,* 406 Mich 455, 466; 280 NW2d 810 (1979). Furthermore, it is clear that the state has a legitimate interest in regulating the commercialization of sexual activities. See discussion, *supra.* However, because the statute prohibits offering or agreeing to engage in sexual conduct for the payment of money, it does have some impact on speech. Despite that fact, we do not agree that the First Amendment prohibits the state from regulating this activity. Speech incident to assignation for prostitution is essentially commercial in nature and intended solely for the purpose of selling a product. *Morgan v Detroit, supra,* p 926. Therefore, it is not entitled to full First Amendment protection. *Metromedia,*

---

[3] An alternative basis for our decision is found in *Morgan v Detroit, supra,* p 926.

*Inc v San Diego,* 453 US 490, 507-508; 101 S Ct
2882; 69 L Ed 2d 800 (1981); *Woll v Attorney
General,* 409 Mich 500, 523; 297 NW2d 578 (1980).
In our opinion, the statute directly advances an
important state interest without unnecessarily re-
stricting other protected activities. Therefore, we
find no First Amendment impediment to applica-
tion of the statutory scheme.

Defendants' final constitutional claim is that an
action under the abatement statute unlawfully
deprives the owner of the premises of the right to
a trial by jury. See GCR 1963, 782.1. We find it
unnecessary to address this claim since it is clear
that defendants waived any right to a jury trial by
failing to make a demand for the same. GCR 1963,
508.4; *Yon v The All American Transport Co, Inc,*
104 Mich App 97, 100; 304 NW2d 495 (1981).

Defendants also raise numerous procedural and
evidentiary claims. They first contend that the
trial court erred by permitting plaintiff to intro-
duce evidence of other occurrences which took
place after the complaint was filed. We find this
claim to be without merit. In order to establish the
right to injunctive relief pursuant to the statute,
plaintiff was required to prove that the nuisance
was of a continuing nature. *State ex rel Oakland
County Prosecutor v Motorama Motel Corp,* 105
Mich App 224, 229-230; 307 NW2d 349 (1981).
Furthermore, in order for the court to acquire
jurisdiction in this abatement proceeding, the com-
plaint had to allege at least one act of assignation
or prostitution which occurred 30 days prior to the
date complaint was filed. MCL 600.3815; MSA
27A.3815; *State ex rel Wayne Prosecuting Attor-
ney v Weitzman,* 21 Mich App 705, 709; 176 NW2d
463 (1970). Since it is apparent that it would often
be impossible to establish the continuing nature of

the nuisance without resorting to proof of other acts which occurred outside of the 30-day period, we find nothing objectionable in permitting plaintiff to introduce evidence of subsequent acts. In *Weitzman, supra,* p 709, the Court ruled that evidence of acts occurring prior to the 30-day period was admissible.

Despite the fact that plaintiff's complaint did not specifically allege the commission of the subsequent acts and although the complaint was not amended to contain such allegations, the evidence was fully considered by the trial court and defendants do not claim that they were unfairly prejudiced by the admission of the evidence. GCR 1963, 118.3. Therefore, since it would constitute a mere formality for us to remand the case to the trial court to permit such an amendment, the pleadings are deemed amended to include those allegations. *Browder v International Fidelity Ins Co,* 413 Mich 603, 609; 321 NW2d 668 (1982).

Defendants next complain that the trial court erred by permitting plaintiff to introduce evidence concerning statements made by the models to the undercover police officers. They claim that evidence of those statements constituted inadmissible hearsay. The statements in question related to offers to perform the acts of prostitution. It was those offers which served as the very basis of plaintiff's cause of action. As such, the evidence was not offered to prove the truth of the matter asserted, *i.e.,* that the models would in fact perform in accordance with the offer. Rather, they were offered only to prove that the offers were made. Therefore, they did not constitute hearsay. MRE 801(c); *Stachowiak v Subczynski,* 411 Mich 459, 464; 307 NW2d 677 (1981).

Defendants next claim that, because one of the

models was acquitted of criminal charges which grew out of these events, the doctrine of collateral estoppel precluded plaintiff from maintaining this action. Assuming that issues decided in a separate criminal proceeding could operate to bar a subsequent claim for injunctive relief to abate a nuisance, see *Micks v Mason,* 145 Mich 212, 215; 108 NW 707 (1906), it would not operate to estop plaintiff from maintaining this claim. The acquittal in the criminal proceeding occurred after trial took place in this case. Collateral estoppel only bars the relitigation of issues previously decided. *Topps-Toeller, Inc v Lansing,* 47 Mich App 720, 727; 209 NW2d 843 (1973). Furthermore, defendants have denied that the models were their employees. Therefore, it cannot be said that the criminal litigation involved an action between the same parties. Finally, even assuming that collateral estoppel did bar plaintiff from introducing evidence of the offer made by the model who was acquitted, it did not preclude evidence from being introduced concerning other illicit acitivity.

Defendants' remaining claims concern the sufficiency of the evidence introduced at trial. They first contend that insufficient evidence was established to support a finding that the nuisance was of a continuing nature. The evidence established that, during a period of nine months in 1980, four undercover police officers visited the Art Studio and inquired concerning the availability of sexual services. On each occasion, the models agreed to perform the services requested, with three agreeing to perform such services on the premises. We find it unnecessary to determine the number of illegal acts which must occur to constitute a nuisance. See *State ex rel Wayne Prosecuting Attorney v Weitzman, supra.* It was not merely the

number of occurrences which was determinative. Rather, it was the rate of occurrences which was the most damaging evidence against defendants herein. On virtually every visit by the police, an offer to engage in illicit sexual activity was made. Under these circumstances, we believe that the trial court was correct in concluding that the nuisance was of a continuing nature.

Defendants finally claim that it was not shown that they had knowledge that the nuisance existed. Although the statute provides that knowledge is not required, MCL 600.3815; MSA 27A.3815, it appears that the Courts have imputed such a requirement in a certain class of cases. *State ex rel Wayne County Prosecuting Attorney v Levenburg, supra,* p 462, fn 1; *State ex rel Oakland County Prosecutor v Motorama Motel Corp, supra.* Assuming that this case is among the class in which proof of knowledge was required, we do not agree that the evidence was insufficient. In *Levenburg, supra,* the Court stated that a judgment of abatement could be upheld if shown that the "owners or operators" of the place found to be a nuisance had knowledge that the prohibited conduct was taking place on the premises. Although it may be conceded, for purposes of this discussion, that defendants did not have knowledge of the nuisance prior to the time the complaint was filed, it is clear that the operator of the establishment did have such knowledge.[4] In any

---

[4] The statute is not intended to punish wrongdoing on the part of the owner. Rather, it is intended to protect society by insuring that the nuisance is abated. *State ex rel Wayne County Prosecuting Attorney v Bernstein,* 57 Mich App 204, 208-209; 226 NW2d 56 (1974). As between society and the owner of the premises, it is not unfair that the risk of loss be placed on the owner who leased the premises to the person who used the premises for the unlawful purpose. The owner's remedy is to recover damages from the lessee or, at the discretion of the trial court, to take advantage of the protections afforded by MCL 600.3840; MSA 27A.3840.

event, even if knowledge of the owner is required, we agree with the trial court's conclusion that the owner was placed on notice of the activity when she was served with a copy of the complaint and that her failure to take action thereafter to insure that the illegal activity was discontinued supported a finding of knowledge. *State ex rel Oakland County Prosecutor v Motorama Motel Corp, supra,* p 229.

Affirmed. Costs to plaintiff.