PEOPLE v WARREN

PEOPLE v ANGER

Docket Nos. 99534, 99535. Decided July 25, 1995. On application by the people for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the orders of the circuit court, and remanded the cases to the circuit court for further proceedings.

Larry N. Warren was charged in the Oakland Circuit Court with conspiracy to accept the earnings of a prostitute, accepting the earnings of a prostitute, conspiracy to keep a house of prostitution, and maintaining a house of prostitution. The court, John J. McDonald, J., denied the defendant's motion to quash all counts. On reconsideration with regard to counts I and II, in light of *Michigan ex rel Wayne Co Prosecutor v Dizzy Duck,* 203 Mich App 250 (1994), the court quashed the charges on the ground that the earnings did not come from acts of prostitution. The Court of Appeals, BRENNAN, P.J., and WAHLS and CONNOR, JJ., denied leave to appeal (Docket No. 172888). The people seek leave to appeal.

Robin M. Anger was charged in the Oakland Circuit Court with conspiracy to accept the earnings of a prostitute, accepting the earnings of a prostitute, conspiracy to keep a house of prostitution, and maintaining a house of prostitution. The court, John J. McDonald, J., denied the defendant's motion to quash all counts. On reconsideration with regard to counts I and II, in light of *Dizzy Duck,* the court quashed the charges because the earnings did not come from acts of prostitution. The Court of Appeals, BRENNAN, P.J., and WAHLS and CONNOR, JJ., denied leave to appeal (Docket No. 172972). The people seek leave to appeal.

In an opinion per curiam, signed by Chief Justice BRICKLEY, and Justices CAVANAGH, BOYLE, RILEY, MALLETT, and WEAVER, the Supreme Court *held:*

Sexual stimulation of a customer's penis by direct manual contact in exchange for money is prostitution.

Reversed and remanded.

Justice LEVIN, dissenting, stated that peremptory disposition is inappropriate. Peremptory disposition, without plenary consideration, full briefing, oral argument, and an opportunity for

the profession to file briefs as amici curiae, should be reserved for cases in which the law is settled and factual assessment is not required. In this case, factual and legal assessment is required; peremptory disposition is not appropriate.

The defendants cannot properly be convicted of accepting the earnings of a prostitute or conspiracy to commit that offense because a woman working in a massage parlor is not a prostitute within the meaning of the Penal Code. The Legislature distinguished between sexual contact and sexual penetration in defining criminal sexual conduct, imposing significantly lesser penalties for proscribed sexual contact as compared with proscribed sexual penetration. The majority exceeds its proper function in taking upon itself equating sexual penetration for money with sexual contact for money. It should be left to the Legislature to consider and decide whether the regulation or proscription of massage parlors should be dealt with at the state or local level, as well as the penalty structure for manual sex for hire and for receiving the earnings of a woman engaged in that activity.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Joyce F. Todd,* Chief, Appellate Division, and *Richard H. Browne,* Assistant Prosecuting Attorney, for the people.

*Carl L. Rubin* and *Gregory Fisher Lord* for the defendants.

PER CURIAM. The defendants are charged with accepting the earnings of a prostitute, and conspiracy to commit that offense. The circuit court quashed the charges on the ground that the earnings did not come from acts of "prostitution." The Court of Appeals denied leave to appeal. We reverse the orders of the circuit court, and remand these cases to the circuit court for further proceedings.

I

Following an undercover investigation, the defendants were arrested for their involvement in

the operation of a so-called "massage parlor." They were charged in a six-count complaint and warrant. After an extended preliminary examination, the defendants were bound over on four criminal charges: (I) conspiracy to accept the earnings of a prostitute,[1] (II) accepting the earnings of a prostitute,[2] (III) conspiracy to keep a house of prostitution,[3] and (IV) maintaining a house of prostitution.[4]

Each defendant then filed a motion to quash Counts I and II, and a motion to quash Counts III and IV. The motions were denied.

At about the time the court made its decision, the Court of Appeals decided a case that involved some similar issues. *Michigan ex rel Wayne Co Prosecutor v Dizzy Duck,* 203 Mich App 250; 511 NW2d 907 (1994).[5] In light of *Dizzy Duck,* the defendants sought reconsideration.

The circuit court granted reconsideration as to Counts I and II, concerning the acceptance of the earnings of a prostitute, and quashed those counts of the information.

The prosecutor applied to the Court of Appeals, but leave to appeal was denied.[6] The denial orders cited *Dizzy Duck.*

The prosecutor has applied to this Court for leave to appeal.

II

At the preliminary examination, testimony was

[1] MCL 750.157a, 750.457; MSA 28.354(1), 28.712.

[2] MCL 750.457; MSA 28.712.

[3] MCL 750.157a, 750.452; MSA 28.354(1), 28.707.

[4] MCL 750.452; MSA 28.707.

[5] Vacated 449 Mich 353; 535 NW2d 178 (1995).

[6] *People v Anger,* unpublished order of the Court of Appeals, entered April 18, 1994 (Docket No. 172972); *People v Warren,* unpublished order of the Court of Appeals, entered April 21, 1994 (Docket No. 172888).

taken from undercover police officers and from women who were employees of the business. These witnesses testified that it was customary for nude female employees to masturbate nude male customers. This was done in exchange for money, and the female employees distributed part of the proceeds to the defendants.[7]

In circuit court, the defendants argued that the female employees were not engaged in "prostitution," since that term refers only to the performance of sexual intercourse in exchange for money. They argued that it is not an act of prostitution to stimulate the genitals with one's hand.

The circuit court initially rejected that argument. However, it reversed itself in light of *Dizzy Duck,* in which a majority found that prostitution is "the performance of sexual intercourse for hire." 203 Mich App 258.

The Court of Appeals in *Dizzy Duck* declined to follow *State ex rel Macomb Co Prosecutor v Mesk,* 123 Mich App 111, 118; 333 NW2d 184 (1983), in which the Court of Appeals had said that prostitution "does include manual stimulation of another person for the payment of money . . . ."[8] Instead, the Court of Appeals in *Dizzy Duck* relied on dictionary definitions of "sexual intercourse" as meaning penile-vaginal penetration. 203 Mich App 260.

Dissenting in *Dizzy Duck,* the dissent said that it would adopt the definition of *Mesk.* Citing an alternative definition,[9] it characterized prostitution

---

[7] This case has not yet been tried. In light of the present procedural posture of the case, we are accepting as true the testimony of the prosecution witnesses at the preliminary examination.

[8] In *Mesk,* the Court of Appeals considered the word "prostitution" as used in the nuisance-abatement statute. MCL 600.3801; MSA 27A.3801.

[9] This is the definition presented in Black's Law Dictionary (5th ed):

as "the conduct of all persons, male and female, who engage in sexual activity as a business." 203 Mich App 265.

III

As was illustrated recently by our several opinions in *People v Lino,* 447 Mich 567; 527 NW2d 434 (1994),[10] this entire area of law is made more difficult by the Legislature's adherence to antiquated and obscure terminology.[11] One of the lessons of the *Lino* inquiry is that it is prudent to decide only the case before us, and not attempt to catalog what is permitted and prohibited by each of these challenging statutes.

As noted above, the Court of Appeals resorted to dictionaries in *Dizzy Duck* in its efforts to locate the meaning of the word "prostitution." Rejecting the statement found in *Mesk,* the Court of Appeals said that "prostitution" is "the performance of sexual intercourse for hire." 203 Mich App 258.

The present case requires us to determine whether the majority in *Dizzy Duck* was correct that prostitution is limited to sexual intercourse for hire. However, the present case does *not* require a determination whether the word "prostitu-

Prostitution is performing an act of sexual intercourse for hire, or offering or agreeing to perform an act of sexual intercourse or any unlawful sexual act for hire. The act or practice of a female of prostituting or offering her body to an indiscriminate intercourse with men for money or its equivalent.

A person is guilty of prostitution, a petty misdemeanor, if he or she: (a) is an inmate of a house of prostitution or otherwise engages in sexual activity as a business; or (b) loiters in or within view of any public place for the purpose of being hired to engage in sexual activity. Model Penal Code, § 251.2.

[10] *Lino* concerned the gross indecency statute. MCL 750.338; MSA 28.570.

[11] There are, of course, exceptions, such as the criminal sexual conduct statute. 1974 PA 266, as amended, MCL 750.520a *et seq.*; MSA 28.788(1) *et seq.*

tion" has a meaning so broad as that proposed by the dissent. The issue today is simply whether "prostitution" includes sexual stimulation of a customer's penis by direct manual contact, in exchange for money.

We find that such activity is prostitution. The Court of Appeals so concluded in *Mesk,* and such an interpretation of the word "prostitution" comports with the ordinary meaning of the word.[12]

Appellate decisions often describe "prostitution" with a reference to sexual intercourse. However, such references rarely constitute a judicial holding that other paid sexual acts, such as fellatio, cunnilingus, anal intercourse, or masturbation are *not* prostitution.[13] Exceptions exist,[14] but we find them less persuasive than decisions that have found that it is prostitution to perform masturbatory massages for money.

The Illinois Supreme Court so held in *Chicago v Cecola,* 75 Ill 2d 423, 428; 27 Ill Dec 462; 389 NE2d 526 (1979). Writing in a civil nuisance suit (like *Dizzy Duck*) the court observed that "[t]he activities of a house of prostitution involve commercial sexual acts of every sort" and that, "[c]learly, a masturbatory massage parlor is engaged in commercial acts of sexual gratification involving the sex organs of one person in the hand of another." Thus, wrote the court in *Cecola,* the "defendants' activities fall clearly within the definition of prostitution . . . ." 75 Ill 2d 428. Put another way, masturbatory massage parlors "are, in essence, specialized houses of prostitution." *Chicago v Ger-*

---

[12] MCL 8.3a; MSA 2.212(1).

[13] The same may be said of dictionary definitions. We do not find in these sources an implication that sexual intercourse is the only paid activity that can be prostitution.

[14] *State ex rel Polk Co Sheriff v Toneca, Inc,* 265 NW2d 909, 913 (Iowa, 1978). See also *State ex rel Gilchrist v Hurley,* 48 NC App 433, 449-450; 269 SE2d 646 (1980), pet den 301 NC 720 (1981).

*aci,* 30 Ill App 3d 699, 703; 332 NE2d 487; 80 ALR3d 1013 (1975).[15]

We agree with the prosecutor that the restrictive definition of "prostitution" advanced by the majority in *Dizzy Duck* is erroneous.[16] Instead, we hold that sexual stimulation of a customer's penis by direct manual contact, in exchange for money, is prostitution.

For these reasons, we reverse the circuit court order that quashed Counts I and II of the information, and we remand these cases to the circuit court for further proceedings. MCR 7.302(F)(1).

BRICKLEY, C.J., and CAVANAGH, BOYLE, RILEY, MALLETT, and WEAVER, JJ., concurred.

LEVIN, J. I would deny leave to appeal, and dissent from the peremptory reversal of the Court of Appeals. I could join in an order granting leave to appeal to consider the jurisprudentially significant issue, decided without oral argument or plenary consideration in the majority opinion.

I

While the majority prefers the approach of the dissenting judge in the Court of Appeals in *Michigan ex rel Wayne Co Prosecutor v Dizzy Duck,* 203 Mich App 250; 511 NW2d 907 (1994), the determination of the majority of the Court of Appeals in

[15] The Illinois Court of Appeals was split on this question until the 1979 decision in *Cecola.*

[16] The prosecutor thinks it would defy common sense to conclude, as under *Dizzy Duck,* that "the women who regularly provide oral sex for money to men who stop their cars by the side of the street" are not prostitutes. While such a case is not before us, we would be surprised to learn that such activity did not fall within the common understanding of the word "prostitution." See, e.g., *Lino,* 447 Mich 579, n 2 (opinion of LEVIN, J.), and *Michigan ex rel Wayne Co Prosecutor v Bennis,* 447 Mich 719, 727, 743; 527 NW2d 483 (1994) (opinion of RILEY, J.).

that case was not so devoid of reason as to justify peremptory reversal. The majority's decision to peremptorily reverse the decision of the Court of Appeals belittles its efforts, in the disposition of these cases, as reflected in its carefully written published opinion in *Dizzy Duck,* and deprives Larry N. Warren and Robin M. Anger and their counsel of an opportunity to fully brief and orally argue in support of the decision of the Court of Appeals.

Today's peremptory decision reflects an increasingly common method of deciding cases, a method that does not provide safeguards against hasty and ill-considered decisions, a method that is unsafe.

When this Court grants leave to appeal, there is an opportunity to educate the justices concerning the state of the record and the law through oral argument, as well as visually through briefs. A justice who may have missed a significant point of law or fact on perusal of the materials considered before voting for peremptory reversal might be enlightened and persuaded in the course of oral argument.

Peremptory disposition, without plenary consideration, full briefing, oral argument, and an opportunity for the profession to file briefs as amici curiae, should be reserved for cases in which the law is settled and factual assessment is not required.[1] In the instant case, factual and legal

[1] *People v Wright,* 439 Mich 914, 914-915 (1992) (LEVIN, J., dissenting); *Roek v Chippewa Valley Bd of Ed,* 430 Mich 314, 322; 422 NW2d 680 (1988) (LEVIN, J., separate opinion); *Grames v Amerisure Ins Co,* 434 Mich 867, 868-875 (1990) (LEVIN, J., dissenting); *People v Little,* 434 Mich 752, 769-770; 456 NW2d 237 (1990) (LEVIN, J., dissenting); *People v Wrenn,* 434 Mich 885, 885-886 (1990) (LEVIN, J., dissenting); *Harkins v Northwest Activity Center, Inc,* 434 Mich 896, 899 (1990) (LEVIN, J., dissenting); *Dep't of Social Services v American Commercial Liability Ins Co,* 435 Mich 508, 515; 460 NW2d 194 (1990) (LEVIN, J., separate opinion); *Yahr v Garcia,* 436 Mich 872, 872-873 (1990) (LEVIN, J., dissenting); *Universal Underwriters Ins Co v Vallejo,* 436

assessment is required. Peremptory disposition is not appropriate.

## II

Because the majority has determined to decide this case peremptorily, I venture the following dissenting opinion on the merits.

Larry N. Warren and Robin M. Anger cannot properly be convicted of accepting the earnings of a prostitute[2] or conspiracy to commit that offense[3] because a woman working in a massage parlor is

Mich 873, 873-874 (1990) (LEVIN, J., dissenting); *People v Stephens,* 437 Mich 903, 903-910 (1991) (LEVIN, J., dissenting); *People v Berkey,* 437 Mich 40, 54; 467 NW2d 6 (1991) (LEVIN, J., dissenting); *Turner v Washtenaw Co Rd Comm,* 437 Mich 35, 38-39; 467 NW2d 4 (1991) (LEVIN, J., separate opinion); *Lepior v Venice Twp,* 437 Mich 955, 956-966 (1991) (LEVIN, J., dissenting); *Rochester Hills v Southeastern Oakland Co Resource Recovery Authority,* 440 Mich 852, 852-856 (1992) (LEVIN, J., dissenting); *In re Reinstatement of Eston (Grievance Administrator v Eston),* 440 Mich 1205, 1205-1207 (1992) (LEVIN, J., dissenting); *In re Reinstatement of Callanan,* 440 Mich 1207, 1207-1209 (1992) (LEVIN, J., dissenting); *McFadden v Monroe Civil Service Comm,* 440 Mich 890, 890-891 (1992) (LEVIN, J., dissenting); *Holly Twp v Dep't of Natural Resources (Holly Twp v Holly Disposal, Inc),* 440 Mich 891, 891-893 (1992) (LEVIN, J., dissenting); *Marzonie v ACIA,* 441 Mich 522, 535-539; 495 NW2d 788 (1992) (LEVIN, J., dissenting); *People v Waleed,* 441 Mich 902, 902-903 (1992) (LEVIN, J., dissenting); *People v Hardison,* 441 Mich 913, 914-916 (1993) (LEVIN, J., dissenting); *People v Justice,* 441 Mich 916, 917-919 (1993) (LEVIN, J., dissenting); *People v LaClear,* 442 Mich 867, 867-871 (1993) (LEVIN, J., dissenting); *Auto-Owners Ins Co v City of Clare,* 446 Mich 1, 16-18; 521 NW2d 480 (1994) (LEVIN, J., dissenting); *Weisgerber v Ann Arbor Center for the Family,* 447 Mich 963, 964-969 (1994) (LEVIN, J., dissenting); *Howard v White,* 447 Mich 395, 405-410; 523 NW2d 220 (1994) (LEVIN, J., dissenting).

See *Schweiker v Hansen,* 450 US 785, 791; 101 S Ct 1468; 67 L Ed 2d 685 (1981) (Marshall, J., dissenting) ("A summary reversal is a rare disposition, usually reserved by this Court for situations in which the law is settled and stable, the facts are not in dispute, and the decision below is clearly in error"); *Leis v Flynt,* 439 US 438, 457-458; 99 S Ct 698; 58 L Ed 2d 717 (1979) (Stevens, J., dissenting) ("Summary reversal 'should be reserved for palpably clear cases of . . . error.' *Eaton v Tulsa,* 415 US 697, 707 [94 S Ct 1228; 39 L Ed 2d 693 (1974)] [Rehnquist, J., dissenting]").

2 MCL 750.457; MSA 28.712.

3 MCL 750.157a, 750.457; MSA 28.354(1), 28.712.

not a prostitute within the meaning of the Penal
Code.

In *Dizzy Duck,* a majority of the Court of Appeals held that prostitution refers to sexual intercourse for hire, meaning vaginal intercourse. The majority in this Court reverses.

Because the activity in the massage parlor did not include oral sex[4] or anal sex, we need not decide whether the Court of Appeals erred in not including oral and anal sex for money within the definition of prostitution.

While it is indeed arguable that the legislative purpose in proscribing prostitution and receiving the earnings of a prostitute includes prohibiting not only vaginal intercourse for money but also oral and anal sex for money, it is unclear whether that legislative purpose included prohibiting, with the same penalty structure for violation, manual sex for money. Massage parlors are a post-World War II phenomenon, appearing long after the enactment of the Penal Code provisions on which this prosecution is based.[5]

The Legislature distinguished between "sexual contact"[6] and "sexual penetration"[7] in defining

---

[4] But see *People v Lino,* 447 Mich 567, 584, n 8; 527 NW2d 434 (1994) (LEVIN, J.).

[5] Chapter LXVII of the Penal Code, 1931 PA 328, concerns prostitution. Sections 452 and 457 were included in that enactment.

[6] "Sexual contact" includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification. [MCL 750.520a(k); MSA 28.788(1)(k).]

[7] "Sexual penetration" means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required. [MCL 750.520a(l); MSA 28.788(1)(l).]

criminal sexual conduct, imposing significantly lesser penalties for proscribed sexual contact as compared with proscribed sexual penetration. The majority exceeds this Court's proper function in taking upon itself equating sexual penetration for money with sexual contact for money. Unmarried teenagers understand that there is a difference between manual sex and "going all the way."

One of the purposes of legislation proscribing prostitution and receiving the earnings of a prostitute is to protect women from exploitation and degradation. Just as the Legislature saw greater need, by imposing greater penalties, for protecting against unconsented or underage sexual penetration than unconsented or underage sexual contact, the Legislature might conclude that there is a need for greater protection, and a correspondingly more severe penalty structure, where there is sexual penetration (vaginal, anal, or oral) for hire than where there is sexual contact (manual) for hire.

Where there is unlawful sexual penetration, there is greater danger of physical abuse beyond that involved in the sexual penetration, and greater risk of sexually transmitted diseases than where there is unlawful sexual contact. Since those risks are present to a considerably lesser extent where manual sex is involved, it is beyond our proper role to conclude that the Legislature intended or would intend that prostitution include manual sex for hire. I would leave it to the Legislature to consider and decide whether the regulation or proscription of massage parlors should be dealt with at the state or local level, as well as the penalty structure for manual sex for hire and for receiving the earnings of a woman engaged in that activity.

Warren and Anger are also charged with viola-

tion of § 452 of the Penal Code constituting maintenance of a house of ill fame for the purpose of lewdness, but no issue in that regard is presented in this appeal. In the companion *Dizzy Duck* case, I agree with the majority that the civil abatement statute[8] may be employed to abate as a nuisance an establishment, such as the Dizzy Duck, where men are stimulated by women hired for that purpose to masturbate to orgasm. In so ruling, the meaning of "lewdness, assignation, or prostitution" for the purposes of a civil abatement statute has been expanded.

The Court's role in construing a penal statute is more limited than in construing legislation not involving the imposition of prison sentences. I do not wish to be understood as having expressed an opinion whether § 452 may properly be read as including the imposition of penal sanctions for maintaining a massage parlor.

---

[8] MCL 600.3801; MSA 27A.3801.