STATE ex rel OAKLAND PROSECUTING ATTORNEY v
ALRAY NORTHCREST PLAZA;

STATE ex rel OAKLAND PROSECUTING ATTORNEY v
BEECH PLAZA ASSOCIATES LIMITED PARTNERSHIP

Docket Nos. 78544, 78974. Submitted April 17, 1985, at Detroit.—
Decided October 22, 1985. Leave to appeal denied, 424 Mich —.

The Oakland County Prosecuting Attorney filed separate nui-
sance abatement actions to prevent allegedly indecent and
obscene conduct during nude and semi-nude dancing contests
held at the Northcrest and Cabaret Theaters. The named
defendants were the owners, lessees, and management person-
nel of the two theaters. The prosecutor's theory was that the
dancers were disorderly persons within the meaning of the
Penal Code, the theaters were places used by those disorderly
persons, and the theaters thereby fell within the statutory
definition of a public nuisance which was subject to abatement.
In each case the Oakland Circuit Court issued ex parte re-
straining orders restraining indecent and obscene conduct. In
the Northcrest Theater case the order was subsequently contin-
ued and the defendants' motion for summary judgment was
denied, Hilda R. Gage, J. The defendants in that case appealed
by leave granted (Docket No. 78544). In the Cabaret Theater
case, the defendants' motion for summary judgment was denied
and a preliminary injunction was entered, enjoining obscene
and indecent conduct, George H. LaPlata, J. The defendants

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Am Jur 2d, Nuisances §§ 85.5, 86.5.
Exhibition of obscene motion pictures as nuisance. 50 ALR3d 969.
Porno shops or similar places disseminating obscene materials as
nuisance. 58 ALR3d 1134.

[2] Am Jur 2d, Breach of Peace and Disorderly Conduct §§ 28 *et seq.*

[3] Am Jur 2d, Nuisances §§ 98 *et seq.*
See the annotations in the ALR3d/4th Quick Index under Nui-
sances.

[4] Am Jur 2d, Lewdness, Indecency, and Obscenity § 17.5.

[5] Am Jur 2d, Constitutional Law § 512.
Am Jur 2d, Lewdness, Indecency, and Obscenity §§ 30-42.
Supreme Court's development, since Roth v United States, of stan-
dards and principles determining concept of obscenity in context
of right of free speech. 41 L Ed 2d 1257.

appealed by leave granted (Docket No. 78974). The appeals were consolidated by the Court of Appeals. *Held:*

1. The public nuisance statute is designed to eliminate the use of property for or in connection with prostitution, gambling and the illicit possession or transfer of intoxicants, not to eliminate obscenity. The prosecutor has filed to state a claim for the abatement of a public nuisance because he has not alleged that the theaters were used by those engaged in those activities.

2. The Penal Code's definition of disorderly persons should not be incorporated into the public nuisance statute so as to allow the finding of a public nuisance without evidence that the place involved was used or kept for the use of prostitution, gambling or illicit possession or transfer of intoxicants.

Reversed and remanded for entry of summary judgment for defendants.

R. B. MARTIN, J., concurred. He wrote separately to express the concern that, while obscenity is not protected by the First Amendment, the nuisance statute provides none of the safeguards of First Amendment rights required where a state has the power to restrain possible rights prior to full judicial review. Further, there is no indication that the Legislature envisioned the use of the public nuisance statute as a means of abating conduct described by the disorderly person statute.

### OPINION OF THE COURT

1. NUISANCE —PUBLIC NUISANCE —OBSCENITY.

> The public nuisance statute was designed to eliminate the use of property for or in connection with prostitution, gambling and the illicit possession or transfer of intoxicants, not to eliminate obscenity (MCL 600.3801; MSA 27A.3801).

2. NUISANCE — PUBLIC NUISANCE — DISORDERLY PERSONS— OBSCENITY.

> The definition of a "disorderly person" in the Penal Code as one who is engaged in indecent or obscene conduct in a public place may not be incorporated into the public nuisance statute so as to bring within the definition of a nuisance a theater in which persons engage in allegedly obscene dancing, thereby subjecting the theater to closure in abatement of the nuisance (MCL 600.3801, 600.3805, 750.167[f]; MSA 27A.3801, 27A.3805, 28.364[f]).

### CONCURRENCE BY R. B. MARTIN, J.

3. NUISANCE — ABATEMENT OF NUISANCE — PUBLIC NUISANCE.

> *Courts, in applying the public nuisance abatement law, look to*

*the principal purpose of the place in question in determining whether the place is a nuisance.*

4. CONSTITUTIONAL LAW — PROTECTED EXPRESSION — FIRST AMENDMENT.

*Live non-obscene nude dancing is a form of protected expression under the First and Fourteenth Amendments.*

5. OBSCENITY — FIRST AMENDMENT — PRIOR RESTRAINTS.

*Obscenity is not protected by the First Amendment; however, if a state is to have restraints on possible First Amendment rights prior to full judicial review, certain safeguards are essential: the burden of instituting judicial proceedings and of proving that material is unprotected must rest on the censor, any restraint prior to judicial review can be imposed only for a specified brief time and only for the purpose of preserving the status quo, and a prompt judicial determination of obscenity must be assured.*

*L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Richard H. Browne,* Assistant Prosecuting Attorney, for plaintiff.

*Taylor & Rubin, P.C.* (by *Stephen M. Taylor),* for defendants Norman Wilson, David R. Prager and George G. Brady.

*Faintuck, Shwedel & Wolfram* (by *Rhonda L. Klein),* for defendants Beech Plaza Associates Limited Partnership and Eccleston Properties Ltd.

Before: GRIBBS, P.J., and T. M. BURNS and R. B. MARTIN,* JJ.

PER CURIAM. Appellants appeal from the circuit court's orders denying their motions for summary judgments pursuant to GCR 1963, 117.2(1), and enjoining alledgedly indecent and obscene conduct during nude and semi-nude dance performances at appellants' theaters. We reverse.

---

* Former circuit judge, sitting on the Court of Appeals by assignment.

Plaintiff filed separate nuisance abatement actions pursuant to MCL 600.3801 and 600.3805; MSA 27A.3801 and 27A.3805 to prevent allegedly indecent and obscene conduct during weekly nude and semi-nude dancing contests held at the Northcrest (Docket No. 78544) and Cabaret (Docket No. 78974) Theaters. In the Northcrest Theater case, the circuit court issued an ex parte temporary restraining order on March 16, 1984, the day the complaint was filed, based on the affidavits of police officers, and denied appellants'[1] motion to set aside the order. The order was amended on March 19, 1984, and continued on May 8, 1984, after appellants' motion for summary judgment pursuant to GCR 1963, 117.2(1) was denied. The order restrained indecent and obscene conduct, including the performers' exposing their vaginas or anuses to the audience.

In the Cabaret Theater case, the circuit court issued a similar ex parte temporary restraining order based on police affidavits on April 17, 1984, the same day the complaint was filed, but rescinded it on April 18, 1984, pending a hearing on appellants' summary judgment motion. Appellants' motion for summary judgment pursuant to GCR 1963, 117.2(1), was denied on May 8, 1984, and a preliminary injunction enjoining obscene and indecent conduct was entered on June 4, 1984. Appellants were granted leave to appeal, but their motions for stay pending appeal were denied by this Court. Their appeals were consolidated by this Court. We reverse the circuit court and remand

---

[1] Due to irregularities in pleading procedures in the circuit court, defendants Beech Plaza Associates Limited Partnership and Eccelston Properties, Ltd, in Docket No. 78974 have been labeled appellees although their position on appeal is that of defendants-appellants Norman Wilson and George Gerald Brady. For conciseness, our references to appellants in the instant case will include appellees Beech Plaza Associates and Eccelston Properties.

for entry of summary judgment for appellants in both cases.

The public nuisance statute, MCL 600.3801; MSA 27A. 3801, defines public nuisances subject to abatement as:

"*Any building*, vehicle, boat, aircraft *or place* used for the purpose of lewdness, assignation or prostitution or gambling, or *used by, or kept for the use of* prostitutes or other *disorderly persons,* or used for the unlawful manufacture, storing, possessing, transporting, sale, keeping for sale, giving away, bartering, furnishing or otherwise disposing of any narcotic and/or hypnotic drug as defined by law or of any vinous, malt, brewed, fermented, spirituous or intoxicating liquors or any mixed liquors or beverages, any part of which is intoxicating, *is hereby decared a nuisance * * *."* (Emphasis added.)

Any such nuisance may be permanently abated pursuant to the Michigan "padlock law", MCL 600.3805; MSA 27A.3805.

Plaintiff contends that the disorderly persons referred to in the above-cited public nuisance statute, MCL 600.3801; MSA 27A.3801, are defined by MCL 750.167; MSA 28.364[2] of the Penal Code

[2] "(1) A person is a disorderly person if the person is any of the following:

"(a) A person of sufficient ability who refuses or neglects to support his or her family.

"(b) A common prostitute.

"(c) A window peeper.

"(d) A person who engages in an illegal occupation or business.

"(e) A person who is intoxicated in a public place and who is either endangering directly the safety of another person or of property or is acting in a manner that causes a public disturbance.

"(f) A person who is engaged in indecent or obscene conduct in a public place.

"(g) A vagrant.

"(h) A person found begging in a public place.

"(i) A person found loitering in a house of ill fame or prostitution or place where prostitution or lewdness is practiced, encouraged or allowed.

which defines disorderly persons to include:

"(f) *A person who is engaged in indecent or obscene conduct in a public place.*" (Emphasis added.)

Characterizing the dancing, or portions thereof, as indecent and obscene, plaintiff inductively argues that the performers were disorderly persons, that the theaters were buildings or places used by or kept for the use of disorderly persons, and that therefore the theaters fell within the statutory definition of nuisance and were subject to abatement. Our review of case law interpreting the public nuisance statute leads us to disagree.

"The purpose of Act No. 389, Public Acts 1925 [MCL 600.3801; MSA 27A.3801], is to eliminate effectively, by statutory procedure, the use of property, real or personal, in connection[3] with gambling, prostitution, and illicit sale of liquor, et cetera." *People, ex rel Wayne Prosecuting Attorney v Sill,* 310 Mich 570, 575; 17 NW2d 756 (1945).

The Court in *Sill* made no mention of obscene conduct as an activity targeted by the public nuisance statute.

In *State ex rel Wayne County Prosecutor v Diversified Theatrical Corp,* 396 Mich 244; 240 NW2d 460 (1976), the Supreme Court held that the

"(j) A person who knowingly loiters in or about a place where an illegal occupation or business is being conducted.

"(k) A person who loiters in or about a police station, police headquarters building, county jail, hospital, court building, or other public building or place for the purpose of soliciting employment of legal services or the services of sureties upon criminal recognizances.

"(l) A person who is found jostling or roughly crowding people unnecessarily in a public place."

[3] But see Justice LEVIN's dissent in *State ex rel Wayne Prosecuting Attorney v Levenburg,* 406 Mich 455, 473; 280 NW2d 810 (1979), arguing for a stricter construction of this statute to require that the condemned activities, not merely those connected or related to them, occur on the premises.

public nuisance statute, which was originally a "red light" abatement statute,[4] was not applicable to a theater showing obscene films. The Court, citing the above-quoted language in *Sill, supra,* and cases from other jurisdictions, recognized that the purpose of the statute was to subject houses of prostitution to abatement, and thus declined to extend it to theaters showing obscene films.[5]

In *State ex rel Wayne County Prosecuting Attorney v Levenburg,* 406 Mich 455; 280 NW2d 810 (1979), in deciding whether a bar used by prostitutes for accosting and soliciting was a statutory nuisance, the Supreme Court reexamined its decision in *Diversified, supra.* The Court found that the *Diversified* decision was based on a review of other jurisdictions' holdings that obscenity did not fall within the purview of lewdness, assignation or prostitution. *Levenburg,* p 463. The *Levenburg* Court labelled as dictum language in *Diversified* stating that the public nuisance abatement statute was intended to apply to houses of prostitution. *Levenburg,* p 463; but see *Diversified, supra,* pp 246, 250 (*specifically holding* that the statute applies only to houses of prostitution). The Court in *Levenburg* found that the nuisance statute extended to places where conduct substantially connected or related to prostitution occurred. *Levenburg,* p 465.[6] The Court thus held that a bar used

[4] The original red light abatement statute, 1915 PA 272, made no reference to disorderly persons despite the existence of a disorderly persons statute, and declared as nuisances only places of lewdness, assignation or prostitution. The gambling and intoxicants portion of the statute were added by 1925 PA 389, which also added the disorderly persons language.

[5] See *People ex rel Arcara v Cloud Books, Inc,* 65 NY2d 324; 491 NYS2d 307; 480 NE2d 1089 (1985), and its expansive interpretation of a similar nuisance statute.

[6] We find the *Levenburg* Court's interpretation of *Diversified* confusing in light of the express statement by the Court in *Diversified* that it was not considering whether lewdness was equivalent to obscenity, *Diversified,* 396 Mich 250, fn 14, and its specific holding that the nuisance abatement statute was applicable only to houses of

by prostitutes for accosting and soliciting (assignation) fell within the ambit of the public nuisance statute and was subject to abatement.

In *State ex rel Saginaw Prosecuting Attorney v Bobenal Investments, Inc,* 111 Mich App 16; 314 NW2d 512 (1981), *lv den* 414 Mich 951 (1982), the question before this Court was whether theaters offering live nude dancing fell within the public nuisance statute as places or buildings used for the purpose of lewdness. After examining the Supreme Court's decisions in *Diversified, supra,* and *Levenburg, supra,* this Court found that the trial court erred by concluding that the term lewdness was synonymous with obscenity and erroneously expanding its definition to include activities not necessarily related to prostitution. *Bobenal,* pp 24-25. Since the plaintiff had not alleged in its complaint that prostitution or the related activities of accosting and soliciting occurred in the theater, this Court found that plaintiff's complaint had failed to state a cause of action upon which relief could be granted under MCL 600.3801; MSA 27A.3801. *Bobenal,* p 26.

In the case at bar, apparently to avoid our decision in *Bobenal, supra,* plaintiff does not argue that indecency and obscenity are equivalent to lewdness for purposes of the public nuisance abatement statute. Instead plaintiff argues that the theaters are public nuisances because they were used by or kept for the use of disorderly persons, *i.e.* those engaging in indecent and obscene conduct. MCL 750.167; MSA 28.364. We cannot agree.

First, the public nuisance statute was designed to eliminate the use of property for or in connection with prostitution, gambling and the illicit possession or transfer of intoxicants, not to elimi-

prostitution. *Diversified, supra,* pp 246, 250; see *Levenburg, supra,* p 473 (Levin, J. disenting).

nate obscenity.[7] *Sill, supra; Bobenal, supra;* see
*Levenburg, supra; Diversified, supra.* Plaintiff in
the instant case has not alleged that the theaters
were kept for or used by those engaging in activi-
ties related to prostitution, gambling or intoxi-
cants, and has thus failed to state a claim for
abatement of a public nuisance. *Bobenal,* 111 Mich
App 26.

Secondly, the incorporation of the Penal Code's
definition of disorderly persons into the public
nuisance statute, as argued for by plaintiff, would
lead to absurd results. For example, disorderly
persons include those who jostle or roughly crowd
people unnecessarily in public places. MCL
750.167(1)(l); MSA 28.364(1)(l). Shoppers descend-
ing upon clearance sales at shopping malls during
the Christmas rush may fall into such categories.
Could those premises be padlocked pursuant to
MCL 600.3805; MSA 27A.3805 because they are
used by these disorderly persons or because the
store or mall owners know of and acquiesce in the
use of their premises by these disorderly persons?
Or, for example, is a police station subject to the
public nuisance and padlock statutes when bonds-
men and lawyers loiter on the premises to solicit
business, since such persons come within the Pe-
nal Code's definition of disorderly persons? MCL
750.167(1)(k); MSA 28.364(1)(k). We think not. In
our view, such activities fall far outside the intent
of the public nuisance abatement statute which
concerns itself with prostitution, gambling and
intoxicants.

[7] If places used for purposes of obscene conduct are to be subject to
abatement as public nuisances, it is the Legislature's function to
enact or expand such provisions, taking care that they pass constitu-
tional muster. Plaintiff, ever-attuned to public sentiment, cannot use
the courts to prevent activities distasteful to the public by utilizing
statutes not enacted for that purpose. Plaintiff may, of course, utilize
any measures currently afforded by the Legislature, *e.g.,* prosecution
of those engaging in obscene conduct.

Since plaintiff has not related the definition of disorderly persons to prostitution, gambling or the possession or transfer of intoxicants, nor alleged that such activities or related activities occurred in either theater, plaintiff has failed to state a nuisance abatement claim in either case at bar. Summary judgment for appellants should have been granted pursuant to GCR 1963, 117.2(1), now MCR 2.116(C)(8). We reverse and remand for entry of summary judgment for appellants, which will also result in the dissolution of the restraining order and preliminary injunction.

Although our disposition of this case renders it unnecessary to address appellants' First Amendment claims, we foresee that incorporation of the disorderly persons penal statute into the nuisance abatement scheme to permit enjoinment of allegedly indecent or obscene dancing could present serious constitutional problems. Although plaintiff argues that dancing is conduct and not speech, and therefore not protected by the First and Fourteenth Amendments, live non-obscene nude dancing is a form of protected expression under the First and Fourteenth Amendments.[8] *Schad v Mt. Ephraim,* 452 US 61; 101 S Ct 2176: 68 L Ed 2d 671 (1981). We agree with Judge MARTIN's concurring opinion that judicially-imposed restraint of presumptively protected expression without adequate procedural safeguards would violate appellants' constitutional rights.

Reversed and remanded.

R. B. MARTIN, J. *(concurring).* I agree with the results of the majority opinion but for slightly

_____

[8] The Michigan constitutional protections may, in certain instances, be broader than federal constitutional protection. However, it appears that with regard to obscenity these constitutional protections, or lack thereof, coincide. See *People v Neumayer,* 405 Mich 341; 275 NW2d 230 (1979).

different reasons. 1925 PA 389 amended the public nuisance law to include not only "[a]ny building * * * used for the purpose of lewdness, assignation or prostitution or gambling, or used by, or kept for the use of prostitutes * * *" but to include buildings "used by, or kept for the use of * * * other disorderly persons". Reading the language as it is written, it would seem the Legislature was aiming the padlock law at disorderly persons other than prostitutes and gamblers.

Our prior appellate cases have never really addressed the question as to whether the "other disorderly persons" referred to those described as disorderly by the disorderly person statute, MCL 750.167; MSA 28.364. The issue was not raised in *State ex rel Wayne County Prosecutor v Diversified Theatrical Corp,* 396 Mich 244; 240 NW2d 460 (1976); *State ex rel Wayne County Prosecuting Attorney v Levenburg,* 406 Mich 455; 280 NW2d 810 (1979); *State ex rel Saginaw Prosecuting Attorney v Bobenal Investments, Inc,* 111 Mich App 16; 314 NW2d 512 (1981), or *People, ex rel Wayne Prosecuting Attorney v Sill,* 310 Mich 570; 17 NW2d 756 (1945). *Diversified, supra,* even cited with approval *Harmer v Tonylyn Productions, Inc,* 23 Cal App 3d 941; 100 Cal Rptr 576 (1972), wherein the California red light abatement law by judicial construction was applied to lewd live stage shows and exhibitions but not to still or motion pictures limited to closed theaters. *Diversified, Bobenal* and *Levenburg* dealt with the question of whether the words "lewdness" and "assignation" referred to acts separate and apart from prostitution. These cases did not question whether "other disorderly persons" could be someone other than prostitutes or gamblers.

There need be no fear that including statutorily defined disorderly persons in the nuisance abate-

ment statute would cause absurd results such as padlocking public places where intoxicated individuals sometimes gather and cause public disturbances. *State, ex rel English v Fanning,* 97 Neb 224, 228; 149 NW 413, 414 (1914), cited in *Diversified,* indicates our courts in applying the abatement law look at the principal purpose of the places involved:

"The statute is not intended as a means of regulating the morals of private individuals, nor to prevent immorality in hotels, mainly devoted to the accommodation of families and moral, well-behaved people."

In our case the principal if not the sole use of the premises was for nude dancing which allegedly became obscene when the proprietor thought police were not present. See also *State ex rel Wayne Prosecuting Attorney v Weitzman,* 21 Mich App 705; 176 NW2d 463 (1970).

The real difficulty with saying that the Legislature intended to control disorderly persons other than prostitutes and gamblers with the nuisance abatement statute is the fact that the nuisance statute makes no provision whatsoever to protect the allegedly disorderly person's First Amendment rights if the person is accused of using premises for indecent or obscene conduct in a public place. Live non-obscene nude dancing is a form of protected expression under the First and Fourteenth Amendments. *Schad v Mt Ephraim,* 452 US 61; 101 S Ct 2176; 68 L Ed 2d 671 (1981). The United States Supreme Court has always severely frowned on prior restraints of protected speech. *Near v Minnesota,* 283 US 697; 51 S Ct 625; 75 L Ed 1357 (1931); *Spokane Arcades, Inc v Brockett,* 631 F2d 135 (CA 9, 1980), *aff'd* 454 US 1022; 102 S Ct 557; 70 L Ed 2d 468 (1981).

In our cases ex parte restraining orders were issued on the days the complaints were filed and temporary injunctions were later signed. While the injunctive order in Beech Plaza was specific in defining the enjoined obscene conduct, the fact questions of what occurred in the defendants' places of business have never been resolved by trial although the injunctive orders continue.

It is true that obscenity is not protected by the First Amendment:

"This Court has consistantly held that obscene material is not protected by the First Amendment as a limitation on the state police power by virtue of the Fourteenth Amendment." *Paris Adult Theatre I v Slaton,* 413 US 49, 54; 92 S Ct 2628; 37 L Ed 2d 446 (1973).

"This much has been categorically settled by the Court, that obscene material is unprotected by the First Amendment." *Miller v California,* 413 US 15, 23; 93 S Ct 2607; 37 L Ed 2d 419 (1973).

However, the United States Supreme Court has been extremely reluctant to permit ex parte procedures to stifle written material even if it is later found to be obscene. *A Quantity of Copies of Books v Kansas,* 378 US 205; 84 S Ct 1723; 12 L Ed 2d 809 (1964).

Again we recognize, as appellees argue, that when we consider nonverbal performances as compared to written works, the state is permitted more latitude in controlling it.

"But as the mode of expression moves from the printed page to the commission of public acts that may themselves violate valid penal statutes, the scope of permissible state regulations significantly increases. States may sometimes proscribe expression that is di-

rected to the accomplishment of an end that the State has declared to be illegal when such expression consists, in part, of 'conduct' or 'action' * * *." *California v LaRue,* 409 US 109, 117; 93 S Ct 390; 34 L Ed 2d 342 (1972).

If the state is to have restraints on possible First Amendment rights prior to full judicial review, certain safeguards are essential: (1) The burden of instituting judicial proceedings and of proving that material is unprotected must rest on the censor; (2) Any restraint prior to judicial review can be imposed only for a specified brief time and only for the purpose of preserving the status quo; and (3) A prompt judicial determination of obscenity must be assured. *Freedman v Maryland,* 380 US 51; 85 S Ct 734; 13 L Ed 2d 649 (1965). *Southeastern Promotions, Ltd v Conrad,* 420 US 546; 95 S Ct 1239; 43 L Ed 2d 448 (1975).

Neither the Michigan public nuisance statute nor the disorderly person statute explicitly provides for such safeguards. Note that in our cases temporary injunctions unfettered by statutory safeguards have lasted well over one year and judicial determination of the factual situation has not yet occurred.

If the Legislature had wanted conduct described as disorderly in the disorderly person statute to be subject to abatement by the use of the public nuisance statute, the Legislature would have had to give some consideration to the impact of the federal and state constitutions on prior restraints of conduct which might be considered obscene by prosecutors but would be protected by the First Amendment according to the courts. There is no legislative history indicating this was considered in 1925 or at any time subsequent thereto. Certainly if the Legislature wanted obscene nude

dancing to be subject to the abatement statute, it could easily have been specific and could have provided the necessary safeguards of the First Amendment rights as required by our United States Supreme Court. Apparently since 1925 no action other than these two commenced in 1984 has attempted to combine these statutes. Therefore, it might well be concluded that no prosecutor from 1925 to 1984 thought that the disorderly person statute applied to the padlock law and no appellate court in any of the multitudinous abatement, disorderly person or obscenity cases even hinted it could be applied.

The Legislature did not envision the use of the public nuisance statute as a means of abating conduct described by the disorderly person statute.