MICHIGAN *ex rel* WAYNE COUNTY
PROSECUTOR v DIZZY DUCK

Docket Nos. 98804, 98805. Decided July 25, 1995. On application by
the people for leave to appeal, the Supreme Court, in lieu of
granting leave, vacated the judgments of the circuit court and
the Court of Appeals and remanded the case to the circuit
court for further proceedings.

The State of Michigan *ex rel* Wayne County Prosecutor, brought
an action in the Wayne Circuit Court against Dizzy Duck,
Boyce J. Maxwell, and the Greenfield Eight Restaurant Com-
pany, Inc., seeking to have the defendants' business establish-
ment, which offered "adult entertainment" such as nude danc-
ing, lap dancing, and a "fantasy room" padlocked as a nui-
sance. The court, Richard C. Kaufman, J., found that none of
the activity taking place on the premises was prostitution, but
that assignation for prostitution, and lap dancing, when done
for the purpose of masturbation, were abatable nuisances. The
Court of Appeals, D. E. HOLBROOK, JR., P.J., and SAWYER, J.
(CORRIGAN, J., dissenting), affirmed (Docket Nos. 134045,
136610). The plaintiff seeks leave to appeal.

In an opinion per curiam, signed by Chief Justice BRICKLEY,
and Justices CAVANAGH, BOYLE, RILEY, MALLETT, and WEAVER,
the Supreme Court *held:*

All the conduct in question constituted at least lewdness.
Thus, it is unnecessary to consider whether some of the activity
also might constitute prostitution, or whether the definition of
those terms overlap.

Justice WEAVER, joined by Justice RILEY, concurring, stated
that a public nuisance is a condition or use of property that
greatly offends or interferes with public health, morals, or
decency. The conduct challenged in this case clearly is a
nuisance and should be abated through the padlocking of the
establishment. All persons, male or female, who engage in
sexual activity as a business are engaging in prostitution; it is
not necessary that participants engage in actual physical con-
duct.

Vacated and remanded.

Justice LEVIN, writing separately, stated that the determina-

tion of the Court of Appeals was not so devoid of reason as to justify peremptory reversal. Peremptory disposition, without plenary consideration, full briefing, oral argument, and an opportunity for the profession to file briefs as amici curiae, should be reserved for cases in which the law is settled and factual assessment is not required. In this case, factual and legal assessment is required; peremptory disposition is not appropriate.

The evidence of solicitation and of the fantasy room activity justifies abatement as a nuisance. The Supreme Court should avoid opining with regard to lap dancing. Lap dancing is a relatively new phenomenon, and occurs at topless bars throughout the Metropolitan Detroit area and probably elsewhere in the state with at least the tacit approval of the Liquor Control Commission. It is likely that there is a difference between the lap dancing at an LCC regulated establishment and the lap dancing at the Dizzy Duck. The record does not inform how to draw a distinction between lap dancing in one place or another. Ordinary lap dancing at a topless bar subject to regulation by the LCC should be left to the LCC to regulate. The Court should not adopt a definition of lewdness that infringes on the Liquor Control Commission's area of responsibility and supervision.

203 Mich App 250; 511 NW2d 907 (1994) vacated.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Andrea Solak,* Chief, Special Operations, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the plaintiff.

*Carl L. Rubin* for the defendants.

PER CURIAM. The Wayne County Prosecuting Attorney sought to have the defendants' business establishment padlocked as a nuisance. Instead, the circuit court issued only an injunction against certain activities. The Court of Appeals affirmed. We vacate the judgments of the circuit court and the Court of Appeals and remand the case to the circuit court for reconsideration.

I

The Court of Appeals provided this account of the facts:

"Dizzy Duck" is an assumed name registered by defendant Greenfield Eight Restaurant Company, Inc. Defendant Boyce J. Maxwell is the incorporator, president, resident agent, and owner-operator. The Dizzy Duck is a small establishment located in Detroit, where patrons pay an entrance fee for admission, which offers adult entertainment, such as nude dancing.

Six police officers gave testimony concerning an undercover investigation and subsequent raid on the Dizzy Duck. Four employees of the Dizzy Duck also testified; three of them were dancers and were granted immunity. There were four activities that were investigated: nude dancing, "lap dancing," the "Fantasy Room," and assignation for prostitution.

Concerning the nude dancing, there was a stage area for individual and group female nude dancing. There was also a plexiglass shower enclosure on stage for "shower dances" where patrons would pay extra to see a dancer shower.

For a fee of $20 for one song, or $30 for two songs, the female employees would perform a "lap dance" for a customer. During these lap dances a dancer would straddle a customer's legs and move herself about the customer's legs and groin area while holding onto either the customer or a pair of handles mounted on the wall. Although some touching of dancers by patrons was observed, an employee hired for security testified that it was a rule that customers were not supposed to "get too friendly" with their hands during lap dances.[1]

The women also solicited to take the men back to the Fantasy Room, which was in a more se-

---

[1] During the "lap dances," the male customers were fully clothed. The female employees were topless. Their genital areas were covered with extremely brief garments ("G-strings").

cluded area of the building. For a fee upwards of $65, customers would be placed in a room opposite one of the dancers, where they could see each other through a plexiglass partition. The women would then dance and sometimes masturbate, while the men watched. The women encouraged the men to masturbate along with them while in the Fantasy Room.[2] Evidence technicians found sperm in samples taken from the fantasy room walls and plexiglass partition.

There was also testimony by the police officers that while on the premises the dancers would solicit for acts of prostitution to occur off the premises. One of the dancers also testified that solicitation for prostitution occurred at the Dizzy Duck and she had done so herself. She explained that if the dancers paid their manager enough money, they "could get away with anything," including leaving with a customer. Another employee who was hired for security testified that the rules of the Dizzy Duck prohibited prostitution or solicitation for prostitution. However, there was some evidence that the owner knew about his dancers' soliciting for prostitution because at least one of the dancers made complaints to him about different treatment in letting certain women leave with customers. [203 Mich App 250, 253-255; 511 NW2d 907 (1994).]

In light of this evidence, the prosecutor filed a civil action, asking the circuit court to padlock the Dizzy Duck on the ground that it was a nuisance under MCL 600.3801; MSA 27A.3801.[3]

---

[2] Only in the fantasy room did male customers expose their genitalia.

[3] Any building, vehicle, boat, aircraft, or place used for the purpose of lewdness, assignation or prostitution or gambling, or used by, or kept for the use of prostitutes or other disorderly persons, or used for the unlawful manufacture, transporting, sale, keeping for sale, bartering, or furnishing of any controlled substance as defined in [MCL 333.7104; MSA 14.15(7104)], or of any vinous, malt, brewed, fermented, spirituous, or intoxicating liquors or any mixed liquors or beverages, any part of which is

Following an evidentiary hearing, the circuit court denied the defendants' motion for directed verdict. Later, the court made a finding that assignation had occurred at the Dizzy Duck, and that it was an abatable nuisance. The court also found that lap dancing, when it involved contact between the groin areas of the employee and the customer (even when those areas are clothed) was an abatable nuisance.

However, the circuit court concluded that these activities were not "so pervasive" that it was necessary to padlock the Dizzy Duck. Instead, the court entered an order in which it enjoined:

> 1. Assignation, or the solicitation for acts of prostitution;
> 2. Lap dancing, where there is significant direct contact through clothing or otherwise of the female genital area and the male groin area.

Following additional proceedings on the issue whether the defendants were in contempt of that order, the circuit court entered an amended order that enjoined:

> 1. Assignation, or the solicitation for acts of prostitution;
> 2. Lap dancing, where there is significant direct contact through clothing or otherwise of the female genital area and the male groin area, *and*

intoxicating, is declared a nuisance, and the furniture, fixtures, and contents of the building, vehicle, boat, aircraft, or place and all intoxicating liquors therein are also declared a nuisance, and all controlled substances and nuisances shall be enjoined and abated as provided in this act and as provided in the court rules. Any person or his or her servant, agent, or employee who owns, leases, conducts, or maintains any building, vehicle, or place used for any of the purposes or acts set forth in this section is guilty of a nuisance. [MCL 600.3801; MSA 27A.3801, as amended by 1988 PA 2.]

*where the main purpose of contact is for mastur-
bation of the male penis.* [Emphasis supplied.]

The prosecutor appealed both orders, arguing
that the trial court should have defined the nui-
sance more broadly, and should have padlocked
the Dizzy Duck rather than merely enjoining cer-
tain activities. The defendants cross appealed, es-
sentially arguing that the circuit court's order was
too broad.

Over a vigorous dissent, the Court of Appeals
affirmed the orders of the circuit court.

The prosecutor has applied to this Court for
leave to appeal.

II

In its opinion, the Court of Appeals considered
the meaning of the statutory phrase "lewdness,
assignation or prostitution." It appears that all
three panel members agreed both that "assigna-
tion" means solicitation of acts of prostitution,[4]
and that assignation was taking place on the
premises.

The majority and the dissent were in wide dis-
agreement, however, regarding the meaning of the
words "prostitution" and "lewdness." The majority
held that prostitution is limited to "the perfor-
mance of sexual intercourse for hire," meaning
penile-vaginal penetration. 203 Mich App 258, 260.
Lewdness was defined by the majority as "those
sexual acts of a nature similar to sexual inter-
course: anal intercourse, fellatio, cunnilingus, and
masturbation performed on another where done
for hire." 203 Mich App 260.

Thus, the majority "easily" concluded that nude

---

[4] *Michigan ex rel Wayne Co Prosecutor v Levenburg,* 406 Mich 455,
466; 280 NW2d 810 (1979), amended 407 Mich 1147 (1979).

dancing is not prostitution or lewdness. 203 Mich App 257. The majority further held that lap dancing is not prostitution and "does not constitute lewdness unless it is done for the purpose of masturbation." 203 Mich App 260. The fantasy-room activities were said not to be lewdness, since the masturbation "was performed by the customer on himself while watching a dancer. Thus, there was no masturbation performed for hire." 203 Mich App 260.

Regarding whether it was necessary to padlock the Dizzy Duck, the majority said that, "[w]hile abatable activity occurred on the premises of the Dizzy Duck, it is not a bordello." The majority thus found it "eminently reasonable for the trial court to limit its remedy in the first instance to merely enjoining the prohibited conduct rather than closing the establishment." 203 Mich App 261-262.

The dissenting opinion in the Court of Appeals disagreed with the majority's limited definitions of both prostitution and lewdness. The dissent proposed a broad definition of prostitution, stating that. "[i]n my view, prostitution is the conduct of all persons, male or female, who engage in sexual activity as a business." 203 Mich App 265. The dissent found it "quite probable that the Legislature that adopted the red light abatement act in 1915 meant the term 'lewdness' to describe that activities of a male involved with a female prostitute," *id.* at 272, but also cited approvingly more general dictionary definitions of lewdness, *id.* at 272-273, as grounds for disagreement with the majority's limitation on the reach of that term.

Of more importance to the disposition of the present case, the dissent disagreed with the majority's effort to articulate distinct meanings for the terms "prostitution" and "lewdness," *id.* at 266,

fearing that doing so in the present civil action could impose unforeseen and unwarranted complications in the criminal arena:

> [T]he majority's effort to distinguish acts of prostitution from acts of lewdness could result in the unnecessary elevation of the burden of proof in the context of the criminal enforcement of prostitution offenses. Under current practice, the prosecutor need not prove the exact nature of the sexual activities purchased. The majority's construction will permit an objection for failure to allege whether an act of prostitution or an act of lewdness has been committed, and may require further specificity in proof.
>
> We do not need to draw a bright line distinction between the terms "prostitution" and "lewdness" in order to resolve this case. Our former cases have never done so. The terms "prostitution" and "lewdness" certainly historically have had overlapping elements and will continue to do so.

In light of its analysis of the definitions of prostitution and lewdness, as well as the overlap in the reach of those terms, the dissent found that the lap dancing, some of the nude dancing, and the fantasy room activities at the Dizzy Duck were either prostitution or lewdness. The dissent opined that all the lap dancing constituted the performance of an unlawful sexual act for hire and thus fell within a broad definition of prostitution, as well as being lewd conduct. The dissent found the majority's distinction between ordinary lap dancing and lap dancing for the purpose of masturbation "essentially unenforceable." *Id.* at 270-271. While not explicitly eliminating the other activities in question from its definition of prostitution, the dissent focused its analysis of the nude danc-

ing described in the dissent[5] and the fantasy room activities as abatable lewd activity associated with prostitution.[6]

The dissent favored padlocking the Dizzy Duck, because "the remedy fashioned was inadequate to cure the proven nuisances . . . ." 203 Mich App 263. The dissent concluded:

> I dissent from the majority's attempt to fashion a new definition of prostitution and lewdness not heretofore recognized in Michigan. Michigan's citizens must be permitted to call a halt to urban blight and contamination of their neighborhoods from red light districts. The people of the State of Michigan have declared their intent; the executive branch has moved to enforce that intent through legitimate means. All the process that is due, and then some, has been afforded the defendants in this state's courts. The remedy fashioned is inadequate to cure the harms. [203 Mich App 276.]

### III

#### A

In *People v Warren,* 449 Mich 341, 347; 535 NW2d 173 (1995), we held that "sexual stimulation of a customer's penis by direct manual contact, in exchange for money," is prostitution. In reaching

---

[5] Nude dancing at the Dizzy Duck frequently involved lewd live stage exhibitions outside the First Amendment's ambit. For example, some nude dancers openly masturbated on stage. One dancer bent over and separated her buttocks to let a customer blow into her anus; another dancer sprayed breast milk on the assembled crowd. [*Id.* at 267.]

[6] "Nude dancing at the Dizzy Duck frequently involved lewd stage exhibitions outside the First Amendment's ambit." *Id.* at 267. "[T]he complaint alleged and the proofs established that nude dancing was substantially connected to and related to prostitution." *Id.* at 268. "The activities in the Fantasy Room amounted to lewd live conduct associated with prostitution." *Id.* at 275.

this conclusion, we rejected the narrow view offered by the Court of Appeals majority in the present case, who would limit the word "prostitution" to sexual intercourse (penile-vaginal penetration).[7] We declined in the criminal action at issue in *Warren,* however, to undertake the task of determining the exact range of behavior that would fall within the term "prostitution." In the present civil action, we find it similarly unnecessary to categorize the activity at the Dizzy Duck as either prostitution or lewdness.[8] It is also unnecessary to the disposition of the matter before us for this Court to adopt the broad definition of prostitution proposed in this case by the dissent.

The nuisance abatement statute includes within its list of abatable conduct both lewdness and prostitution. The majority in the Court of Appeals held that only certain instances of lap dancing constituted lewdness, while finding that other lap dancing, as well as all the nude dancing and fantasy room activities, did not constitute either lewdness or prostitution. The dissent disagreed, finding that all the activities in question were either lewdness or prostitution, and that the conduct was so pervasive at the Dizzy Duck as to warrant padlocking the establishment. Because we agree with the dissent that all the conduct in question constituted at least lewdness, we find it unnecessary to consider whether some of the activity might also constitute prostitution, or if the definition of those terms overlap.

B

Although variations of the word "lewd" appear

[7] See also *Michigan ex rel Wayne Co Prosecutor v Bennis,* 447 Mich 719, 727, 743; 527 NW2d 483 (1994) (opinion of RILEY, J.).

[8] Like the Court of Appeals, we see no error in the circuit court's finding that assignation was taking place at the Dizzy Duck.

in several Michigan statutes,[9] the decisions of this Court provide no clear guidance with regard to the meaning of the word. In *State ex rel Wayne Co Prosecutor v Diversified Theatrical Corp,* 396 Mich 244; 240 NW2d 460 (1976), this Court treated the word "lewdness" as being essentially synonymous with the word "prostitution." However, two things must be said of *Diversified Theatrical.* First, it concerned a motion picture theater. We are not called on today to rule on an issue concerning filmed or videotaped depictions of sexual activity. Principles governing the regulation of filmed activity cannot automatically be applied to live exhibitions. Second, this Court expressed substantial reservations about the *Diversified Theatrical* analysis in *Michigan ex rel Wayne Co Prosecutor v Levenburg,* 406 Mich 455; 280 NW2d 810 (1979).[10] Noting that *Diversified Theatrical* indicated that only acts of assignation or prostitution are "lewd," 396 Mich 248-250, this Court said in *Levenburg,* "We do not accept this dictum as controlling . . . ." 406 Mich 463. This Court then focused on the word "assignation," leaving for another day the term "lewdness." 406 Mich 464. The Court did not explore further the meaning of the word until it decided *Michigan ex rel Wayne Co Prosecutor v Bennis,* 447 Mich 719; 527 NW2d 483 (1994).

Statutory terms are normally interpreted in light of their ordinary meaning, MCL 8.3a; MSA 2.212(1), but definitional aids provide only general instruction in the present case.[11]

---

[9] MCL 600.2938(1), 600.3801, 750.167(i), 750.335, 752.364(1)(b), 750.448, 750.449, 750.449a, 750.452, 750.454; MSA 27A.2938(1), 27A.3801, 28.364(i), 28.567, 28.579(364)(1)(b), 28.703, 28.704, 28.704(1), 28.707, 28.709.

[10] See n 4.

[11] Lewd. Obscene, lustful, indecent, lascivious, lecherous. The term imports a lascivious intent. It signifies that form of immorality which has relation to moral impurity, or that which is carried on in a wanton manner.

Thus, we are left with the fact that "lewdness" has been understood to have a meaning closely related to the word "prostitution."[12] *Diversified Theatrical,* 396 Mich 250, n 13; *Chicago v Geraci,* 30 Ill App 3d 699, 702-704; 332 NE2d 487; 80 ALR3d 1013 (1975). The breadth of what might be lewd cannot be determined,[13] but lewdness does include some sexual activities that stop just short of prostitution, as well as scandalous sexual exhibitions.[14]

As described in the record of this case, lap dancing is lewd. An almost-nude female employee squirming in the lap of a customer for his sexual arousal is conduct that carries one right up to the line where prostitution begins. In *State ex rel Miller v Private Dancer,* 83 Ohio App 3d 27; 613 NE2d 1066 (1992), there is an extended discussion

Lewdness. Gross and wanton indecency in sexual relations. Gross indecency so notorious as to tend to corrupt community's morals. Licentiousness; that form of immorality which has relation to sexual impurity. Moral turpitude. Open and public indecency. Sensuality; debauchery.

Any act which the actor knows is likely to be observed by others who would be affronted or alarmed and hence it is a criminal offense. Model Penal Code, § 251.1. Lewdness is specifically made an offense under some state statutes, and is included under more general clauses in others. [Black's Law Dictionary (5th ed). Citations omitted.]

[12] In *Levenburg,* we rejected the notion that the words "lewdness" and "assignation" are synonymous with the word "prostitution." We do not, however, reject the notion that the terms are closely related.

[13] We are mindful of our experience in *People v Brashier,* decided with *People v Lino,* 447 Mich 567; 527 NW2d 434 (1994). There we were asked to determine whether the gross indecency statute was violated by conduct that was quite unfamiliar. MCL 750.338; MSA 28.570. We limited our analysis in *Lino/Brashier* to the facts presented in those cases, and we likewise decline here to rule on facts not before us.

[14] In *Bennis,* three justices of this Court stated that "the common definition of 'lewdness' includes a lustful and obscene display of illicit sexual activity." 447 Mich 726. Those justices also said that "it is limited to those instances in which an act of lewdness occurs in furtherance of or for the purpose of prostitution." *Id.*

of whether lap dancing is lewdness. The *Miller* court said that "lap dancing was lewd and tended to incite sensual desire or imagination," *id.* at 32, and we agree.

The activities in the fantasy room were also lewd. While there was no physical contact whatever between the employee and the customer, an exhibition of masturbation by an employee who urges a customer to masturbate in her presence is certainly a scandalous sexual exhibition. It is, therefore, lewd conduct.

For the same reasons, the nude dancing was lewd to the extent, and only to the extent, that it involved masturbation or other sexual activity, as described by the Court of Appeals dissent, on stage.[15]

C

The circuit court found that none of the activity taking place at the Dizzy Duck was prostitution. It found two activities that were abatable nuisances —assignation for prostitution, and lap dancing when done for the purpose of masturbation. We find that all the lap dancing was lewd conduct, and that the activities in the fantasy room and a portion of the nude dancing were lewd conduct.

In light of these holdings, we vacate the judgments of the circuit court and the Court of Appeals, and remand this case to the circuit court for further consideration of the issue whether the establishment should be padlocked. MCR 7.302(F)(1).

[15] N 5. We are well aware that there is a body of law concerning the extent to which nude dancing may be subject to protection under the First Amendment. We offer no opinion on that subject today. Rather, we simply hold that public masturbation and sexual activity are lewd conduct.

BRICKLEY, C.J., and CAVANAGH, BOYLE, RILEY, MALLETT, and WEAVER, JJ., concurred.

WEAVER, J. (*concurring*). I agree with the result of the per curiam opinion remanding this matter to the trial court for possible padlocking of the Dizzy Duck establishment under the abatement of nuisance statute. MCL 600.3801; MSA 27A.3801. I write separately because I believe the majority fails to properly define the boundaries of what conduct constitutes prostitution.

Even assuming the facts were as presented by the majority, I find its conclusions lack the direction needed in this case. Furthermore, the majority failed to address one critical fact: the dancers received no compensation other than the tips paid to them by the patrons.[1]

Defendant was prosecuted pursuant to the nuisance abatement statute, MCL 600.3801 *et seq.*; MSA 27A.3801 *et seq.*, which provides in pertinent part:

Any building, vehicle, boat, aircraft, or place used for the purpose of lewdness, assignation or

---

[1] The following testimony was taken at trial, offered by a female employee of defendants:

*Q.* How did you know what to do when [you] started working?
*A.* The girls told me.
*Q.* The other girls?
*A.* Uh-hum.
*Q.* What did they tell you?
*A.* Basically to do lap dances and make your money.
*Q.* When you say make your money, weren't you paid for working there?
*A.* No.
*Q.* You didn't get any wages from anybody?
*A.* No.
*Q.* So how did you make your money?
*A.* Lap dancing, table dancing.

prostitution or gambling, or used by, or kept for the use of prostitutes or other disorderly persons . . . is declared a nuisance, and . . . shall be enjoined and abated as provided . . . .

I find the dissenting judge's analysis highly persuasive. She has thoroughly and correctly summarized Michigan law regarding public nuisances of this sort. Of particular importance are the following excerpts from her dissenting opinion, which I adopt:

> A public nuisance is a condition or use of property that greatly offends or interferes with public health, morals, or decency. *Bloss v Paris Twp,* 380 Mich 466; 157 NW2d 260 (1968); *Garfield Twp v Young,* 348 Mich 337; 82 NW2d 876 (1957). Statutes and ordinances regulating prostitution, a species of laws regulating public morals, are within the police powers. Michigan's interest in protecting societal order, health, safety, and morality in places of public accommodation would be furthered by padlocking this proven nuisance.
>
> \* \* \*
>
> The testimony of the various undercover Detroit police officers, together with the physical evidence seized from the premises, established that the Dizzy Duck *was* a "house of prostitution, lewdness, or assignation" under the act. Certain sexual activities on the premises reflect a 1990s-style commitment to "safe sex." For example, male customers who engaged in sexual activity remained clothed. Further, sexual behavior in the presence of others was usually autoerotic—albeit for hire. This 1990s version of debased, degrading, and licentious conduct is nonetheless the type of conduct that the people historically have chosen to abate as acts of prostitution or lewdness. In my view, prostitution is the conduct of all persons, male and female, who engage in sexual activity as a business.
>
> \* \* \*

We do not need to draw a bright line distinction between the terms "prostitution" and "lewdness" in order to resolve this case. Our former cases have never done so. The terms "prostitution" and "lewdness" certainly historically have had overlapping elements and will continue to do so.

* * *

## I

### ASSIGNATION AND NUDE DANCING

.* * *

Nude dancing at the Dizzy Duck frequently involved lewd live stage exhibitions outside the First Amendment's ambit. For example, some nude dancers openly masturbated on stage. One dancer bent over and separated her buttocks to let a customer blow into her anus; another dancer sprayed breast milk on the assembled crowd.

. . . Nude dancing is not beyond regulation. The complaints in *Bobenal*[2] and *Northcrest*[3] were ruled defective because they failed to connect the nude dancing to prostitution, lewdness or assignation. These defects are not present here, because the complaint alleged and the proofs established that nude dancing was substantially connected to and related to prostitution. For example, testimony revealed that one dancer lay on the stage, spread her legs, and displayed her genitals to excite the customers and encourage the purchase of lap dances.

* * *

## II

### LAP DANCING

For prices of $20 or $30, depending on whether a customer purchased one or two songs, a dancer clad in a G-string would straddle a clothed customer's lap and thrust back and forth.

---

[2] *State ex rel Saginaw Co Prosecutor v Bobenal Investments, Inc,* 111 Mich App 16; 314 NW2d 512 (1981).

[3] *State ex rel Oakland Co Prosecutor v Alray Northcrest Plaza,* 146 Mich App 595; 381 NW2d 731 (1985).

\* \* \*

Lap dancing is sexual stimulation of another for hire and involves actual physical contact.

\* \* \*

I do endorse the definition of prostitution in *State ex rel Gilchrist v Hurley,* 48 NC App 433, 443; 269 SE2d 646 (1980), cited but not adopted in *Mesk:*[4]

"We hold that prostitution plainly includes the offering or receiving of the body, in return for a fee, for acts of vaginal intercourse, anal intercourse, fellatio, cunnilingus, masturbation, or physical contact with a person's genitals, pubic area, buttocks or breasts. *We hasten to add that our cataloguing of these acts of sexual behavior is not intended to exclude other acts of sexual conduct offered or received for pay."* [Emphasis added.]

\* \* \*

### III

### FANTASY ROOM

For prices ranging from $65 to $125, a customer could purchase a trip to the Fantasy Room. . . . A dancer would enter one side of the room; the customer entered the other. The dancer would then remove her clothing and masturbate in the customer's presence. She would also invite the customer to join her if he chose, by masturbating on the other side of the partition. . . .

The majority concludes, in reliance on *Mesk, supra,* that masturbation of oneself in the presence of another for hire is not prostitution or lewdness. In *Mesk,* this Court opined that the term "prostitution" includes manual stimulation of another person for the payment of money. The issue presented here was not before the *Mesk* Court. The *Mesk* decision does not foreclose automasturbatory acts for hire from the definition of prostitution or lewdness. . . .

---

4 *State ex rel Macomb Co Prosecutor v Mesk,* 123 Mich App 111; 333 NW2d 184 (1983).

The activities in the Fantasy Room amounted to lewd live conduct associated with prostitution. Manual stimulation of oneself in the presence of another for hire is proscribed activity, because, under [*State ex rel Wayne Co Prosecutor v*] *Diversified* [*Theatrical Corp*][5] and [*Chicago v*] *Geraci*,[6] it is a sex act of "whatever nature" performed for money. Nothing in our precedents requires that participants must engage in actual physical contact. [203 Mich App 250, 264-276; 511 NW2d 907 (1994).]

CONCLUSION

The conduct challenged in the instant case is clearly a nuisance and as such should be abated through the padlocking of the establishment. All persons, male or female, who engage in sexual activity as a business are engaging in prostitution and should be treated under the law accordingly.

RILEY, J., concurred with WEAVER, J.

LEVIN, J. (*separate opinion*). I would deny leave to appeal, and dissent from the peremptory reversal of the Court of Appeals. I could join in an order granting leave to appeal to consider the jurisprudentially significant issue, decided without oral argument or plenary consideration in the majority opinion.

I

While the majority prefers the approach of the dissenting judge in the Court of Appeals, the determination of the majority of the Court of Appeals was not so devoid of reason as to justify peremp-

[5] 396 Mich 244; 240 NW2d 460 (1976).

[6] 30 Ill App 3d 699; 332 NE2d 487 (1975).

tory reversal. The majority's decision to peremptorily reverse the decision of the Court of Appeals belittles its efforts, in the disposition of this case, as reflected in its carefully written published opinion, and deprives Dizzy Duck and its counsel of an opportunity to fully brief and orally argue in support of the decision of the Court of Appeals.

Today's peremptory order reflects an increasingly common method of deciding cases, a method that does not provide safeguards against hasty and ill-considered decisions, a method that is unsafe.

When this Court grants leave to appeal, there is an opportunity to educate the justices concerning the state of the record and the law through oral argument, as well as visually through briefs. A justice who may have missed a significant point of law or fact on perusal of the materials considered before voting for peremptory reversal might be enlightened and persuaded in the course of oral argument.

Peremptory disposition, without plenary consideration, full briefing, oral argument, and an opportunity for the profession to file briefs as amici curiae, should be reserved for cases in which the law is settled and factual assessment is not required.[1] In the instant case, factual and legal

---

[1] *People v Wright,* 439 Mich 914, 914-915 (1992) (LEVIN, J., dissenting); *Roek v Chippewa Valley Bd of Ed,* 430 Mich 314, 322; 422 NW2d 680 (1988) (LEVIN, J., separate opinion); *Grames v Amerisure Ins Co,* 434 Mich 867, 868-875 (1990) (LEVIN, J., dissenting); *People v Little,* 434 Mich 752, 769-770; 456 NW2d 237 (1990) (LEVIN, J., dissenting); *People v Wrenn,* 434 Mich 885, 885-886 (1990) (LEVIN, J., dissenting); *Harkins v Northwest Activity Center, Inc,* 434 Mich 896, 899 (1990) (LEVIN, J., dissenting); *Dep't of Social Services v American Commercial Liability Ins Co,* 435 Mich 508, 515; 460 NW2d 194 (1990) (LEVIN, J., separate opinion); *Yahr v Garcia,* 436 Mich 872, 872-873 (1990) (LEVIN, J., dissenting); *Universal Underwriters Ins Co v Vallejo,* 436 Mich 873, 873-874 (1990) (LEVIN, J., dissenting); *People v Stephens,* 437 Mich 903, 903-910 (1991) (LEVIN, J., dissenting); *People v Berkey,* 437 Mich 40, 54; 467 NW2d 6 (1991) (LEVIN, J., dissenting); *Turner v Washtenaw Co Rd Comm,* 437 Mich 35, 38-39; 467 NW2d 4 (1991)

assessment is required. Peremptory disposition is not appropriate.

## II

Because the majority has determined to decide this case peremptorily, I venture the following opinion on the merits.

I agree with the majority that there is sufficient evidence of solicitation to justify under *Michigan ex rel Wayne Co Prosecutor v Levenburg*, 406 Mich 455; 280 NW2d 810 (1979), amended 407 Mich 1147 (1979), abating the Dizzy Duck as a nuisance under the civil abatement statute.[2] Additionally, there is the evidence of the activity in the fantasy room. Although there is no physical con-

(Levin, J., separate opinion); *Lepior v Venice Twp*, 437 Mich 955, 956-966 (1991) (Levin, J., dissenting); *Rochester Hills v Southeastern Oakland Co Resource Recovery Authority*, 440 Mich 852, 852-856 (1992) (Levin, J., dissenting); *In re Reinstatement of Eston (Grievance Administrator v Eston)*, 440 Mich 1205, 1205-1207 (1992) (Levin, J., dissenting); *In re Reinstatement of Callanan*, 440 Mich 1207, 1207-1209 (1992) (Levin, J., dissenting); *McFadden v Monroe Civil Service Comm*, 440 Mich 890, 890-891 (1992) (Levin, J., dissenting); *Holly Twp v Dep't of Natural Resources (Holly Twp v Holly Disposal, Inc)*, 440 Mich 891, 891-893 (1992) (Levin, J., dissenting); *Marzonie v ACIA*, 441 Mich 522, 535-539; 495 NW2d 788 (1992) (Levin, J., dissenting); *People v Waleed*, 441 Mich 902, 902-903 (1992) (Levin, J., dissenting); *People v Hardison*, 441 Mich 913, 914-916 (1993) (Levin, J., dissenting); *People v Justice*, 441 Mich 916, 917-919 (1993) (Levin, J., dissenting); *People v LaClear*, 442 Mich 867, 867-871 (1993) (Levin, J., dissenting); *Auto-Owners Ins Co v City of Clare*, 446 Mich 1, 16-18; 521 NW2d 480 (1994) (Levin, J., dissenting); *Weisgerber v Ann Arbor Center for the Family*, 447 Mich 963, 964-969 (1994) (Levin, J., dissenting); *Howard v White*, 447 Mich 395, 405-410; 523 NW2d 220 (1994) (Levin, J., dissenting).

See *Schweiker v Hansen*, 450 US 785, 791; 101 S Ct 1468; 67 L Ed 2d 685 (1981) (Marshall, J., dissenting) ("A summary reversal is a rare disposition, usually reserved by this Court for situations in which the law is settled and stable, the facts are not in dispute, and the decision below is clearly in error"); *Leis v Flynt*, 439 US 438, 457-458; 99 S Ct 698; 58 L Ed 2d 717 (1979) (Stevens, J., dissenting) ("Summary reversal 'should be reserved for palpably clear cases of . . . error.' *Eaton v Tulsa*, 415 US 697, 707 [94 S Ct 1228; 39 L Ed 2d 693 (1974)] [Rehnquist, J., dissenting]").

[2] MCL 600.3801; MSA 27A.3801.

tact between the woman on one side of the plexiglass and the man on the other, there is evidence that men are stimulated by women hired for that purpose to masturbate to orgasm. That constitutes lewdness within the meaning of a civil abatement statute proscribing as a nuisance maintenance of a place of lewdness, assignation, or prostitution.

## III

The Court should avoid. opining with regard to lap dancing. Lap dancing is a relatively new phenomenon, and occurs at topless bars throughout the Metropolitan Detroit area and probably elsewhere in the state with at least the tacit approval of the Liquor Control Commission.

It is likely that there is a difference between the lap dancing at an LCC-regulated establishment and the lap dancing at the Dizzy Duck.[3] We do not have a record that informs us how to draw a distinction between lap dancing in one place or another. There is no need to opine respecting lap dancing, which does not ordinarily or necessarily involve stimulating men to orgasm. Possibly lap dancing with the purpose of stimulating men to orgasm should subject the place where such activity occurs to abatement as a nuisance.

Ordinary lap dancing at a topless bar subject to regulation by the LCC should be left to the LCC to regulate. This Court should not adopt a definition of lewdness that infringes on the LCC's area of responsibility and supervision.

## IV

I concur in the remand to the circuit court for

---

[3] Under the circumstance that liquor cannot be served at the Dizzy Duck, something more is undoubtedly offered at the Dizzy Duck, and this undoubtedly is true of lap dancing, to say nothing about the fantasy room and solicitation.

reconsideration of the remedy on the basis of the evidence of solicitation and the activity in the fantasy room.